James E. **LEWISOHN**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Argued June 17, 1981.

Decided Aug. 3, 1981.

Bernstein, Shur, Sawyer & Nelson, Peter J. Rubin (orally), Portland, for plaintiff.

William R. Stokes (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., WERNICK and ROBERTS, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

In this appeal by the State from the Superior Court's granting of petitioner Lewisohn's application for a writ of habeas corpus, the function of the Law Court is a narrow one. First, if the single justice of the Supreme Judicial Court, who sat by assignment in the Superior Court,[1] was cor-

---

1. By administrative practice, in carrying out his responsibilities under 14 M.R.S.A. § 5503 (1980) and 15 M.R.S.A. § 2129(4) (Supp.1980), the Chief Justice assigns a single justice of the Supreme Judicial Court to sit in any post-conviction review proceeding involving review of proceedings before a justice of the Superior

rect in finding as a fact that a woman who sat on the jury that tried and convicted petitioner for murder[2] failed to reveal on voir dire that she had already made up her mind he was guilty, the State concedes—as it obviously must—that he did not get a fair trial. Second, that critical finding of fact made by the habeas justice on the basis of extensive testimony heard by him is reviewed by the Law Court only on a "clearly erroneous" standard. Only if we sitting in the appellate court conclude that the habeas justice, despite his superior opportunity for assessing the credibility of witnesses, was clearly wrong in his factual determination, can we reverse that factfinding and the judgment based upon it. Within that doubly restricted function of the Law Court, we affirm the Superior Court's order that the murder indictment against petitioner be dismissed with prejudice and that petitioner be released from custody "unless the State shall cause petitioner to be retried ... within ninety (90) days."[3]

Twenty-two witnesses testified before the habeas justice in February, 1981. They included all but two of those who served as jurors at petitioner's trial in July, 1975. Of the two jurors not testifying, one had died in the intervening period and the other was apparently out of the jurisdiction at the time of the hearing. Several of the witnesses in the post-conviction proceeding recalled having heard in the jury room, while they were awaiting voir dire, disparaging comments concerning petitioner to the effect that he was unable to control his emotions, smoked marijuana, and used profanity in his classes at the University of Maine.

In addition, several witnesses remembered contrasting comments to the effect that Mrs. Lewisohn was "a nice lady" and "a good guidance counsellor."

One of the witnesses at the habeas hearing was Arthur Rowe III. Mr. Rowe was a member of the jury pool but was not selected to sit on the trial jury. He recounted hearing comments in the jury room about petitioner made by a woman who ultimately served on petitioner's petit jury. Of her, he said:

> I do remember there was a lady, I'm not sure who she was, but I do remember she was picked for the Lewisohn jury and she knew all there was to know about it. She knew when it happened and the whole thing. She seemed to have preconceived notions about it. Mainly that he was guilty. I was really surprised that she was picked.

Additionally, Mr. Rowe testified that the same woman failed to respond during voir dire when the court asked members of the jury pool to stand if they knew anything about the case from pretrial publicity. Also, Mr. Rowe recalled that that woman failed to stand when the court asked if any of the potential jurors had formed an opinion in advance as to petitioner's guilt or innocence.

On the basis of Mr. Rowe's testimony, the habeas justice found that the information known to the woman juror and her opinion as to petitioner's guilt were "ineradicably prejudicial" to him and "without more destroyed the impartiality of the jury."[4] Thus, by Mr. Rowe's account, that woman

Court. In this opinion, that justice will at times be referred to as the "habeas justice."

2. This court denied petitioner's direct appeal from his murder conviction, *State v. Lewisohn*, Me., 379 A.2d 1192 (1977).

3. The habeas justice subsequently denied petitioner Lewisohn's motion to be released on bail pending the State's appeal, and the Law Court affirmed that denial of bail in a separate decision reported as *Lewisohn v. State*, Me., 431 A.2d 53 (1981).

4. The hearing justice made the following explicit finding:

> Juror Ruth Hackett had a great deal of information about the Lewisohn case and about Dr. and Mrs. Lewisohn, some of which she had obtained from media coverage. She shared her knowledge with numerous other panelists and indicated her judgment that petitioner was guilty. To truthfully answer the questions asked at the voir dire examination, she was required to disclose this knowledge and her opinion of petitioner's guilt. She did not do so. The information known to Ms. Hackett and her opinion as to petitioner's guilt were ineradicably prejudicial to petitioner.

juror served on the Lewisohn jury with a preconceived notion of his guilt, and neither the presiding justice nor the parties ever had an opportunity to probe the extent of her established views or their effect upon her ability to reach a verdict exclusively upon the basis of the evidence presented at trial. The habeas justice held that, without more, the presence of that one woman on the jury prevented the Lewisohn trial from comporting with elementary principles of fairness. On appeal, we need to address only the justice's finding as to that juror.

■■■ Under the "clearly erroneous" test, M.R.Civ.P. 52(a), a lower court's findings of fact will stand "unless they clearly cannot be correct because there is *no* competent evidence to support them." *Brooks Bros., Inc. v. Harris,* Me., 432 A.2d 750, 751 (1981), *citing and quoting Harmon v. Emerson,* Me., 425 A.2d 978, 982 (1981) (emphasis in original). Thus, the function of an appellate court is not to review a cold transcript and draw its own factual inferences; rather, appellate review of factual findings is limited to investigation of the record before it to determine whether competent evidence exists to support the lower tribunal's factual conclusions. It is only when *no competent evidence exists to support those findings that reversal is appropriate. See Harmon v. Emerson, supra* at 982.

■■ In urging this appellate court to declare that the findings of fact made by the habeas justice were clearly erroneous, the State makes much of the fact that Mr. Rowe could not identify by name the juror he described.[5] Her identity has only the

indirect significance of explaining why the unnamed woman never testified before the habeas justice concerning the circumstances surrounding her statements in the jury room before voir dire. The matter of prime importance is whether the woman described by Mr. Rowe as having expressed her opinion of Lewisohn's guilt was later selected for jury service. That she is is plainly supported by Mr. Rowe's uncontroverted testimony.

The specific identity of the woman juror described by Mr. Rowe is rendered even less important by the fact that shortly after overhearing her views as to petitioner's guilt, Mr. Rowe was specifically surprised—as he testified in the habeas hearing—to see her accepted to serve on the Lewisohn jury. His contemporaneous surprise at the woman juror's failure to reveal her preexisting opinion and at her consequent selection for the Lewisohn jury is the kind of specific dramatic fact that was understandably recalled by Mr. Rowe after a lapse of more than five years. That testimony had a ring of authenticity to it. It showed that Mr. Rowe had contemporaneously "connected up" the woman's expression of her opinion of Lewisohn's guilt, his own understanding from the voir dire questioning of what were and were not disqualifying circumstances, and the specific identity of the woman juror who was, despite her biased opinion, being picked for jury service. Mr. Rowe's testimony was sufficiently detailed to support findings that a prospective juror held a preconception that Lewisohn was guilty, that nonetheless she stayed mute when specifically asked on voir dire whether she had

---

5. Although the identity of the woman whose name Mr. Rowe did not know is only collaterally of significance, the single justice was able to identify her by the following reasoning process:

(1) Rowe said she was chosen as a juror. There were only six female jurors seated: Pratt, Bennett, Warren, Jordan, Cullens, and Hackett. (2) Rowe said that she did not respond to the Court's question set forth on page five of the transcript of the voir dire proceeding. The transcript shows that jurors Jordan, Pratt, and Bennett did respond to that question, thus excluding them as the subject juror. (3) Rowe stated that the juror in question was not Warren, whom he knew,

leaving only Cullens and Hackett. (4) Rowe said the subject juror was in her forties. It is stipulated that Hackett died on June 24, 1980. She would then have been 50 years of age, which would have made her 44 years of age in 1974 at the time of the Lewisohn trial. (5) Cullens testified before the Court and is clearly in her early thirties which would mean that she was in her middle to late twenties at the time of the Lewisohn trial.

Therefore, all persons other than Hackett are eliminated. Only Hackett meets Rowe's description of the juror in question. She is the only female juror unavailable to testify before the Court in these proceedings.

formed any advance opinion as to Lewisohn's guilt or innocence, and that she sat on the jury that tried him.

■ The State also attacks Mr. Rowe's testimony as vague and impressionistic, on the basis that despite the fact that he remembered the woman juror expressed a definite view that petitioner was guilty, he could not recall the specifics of her remarks. That argument does not, however, persuade us that the habeas justice's finding that the woman juror had already decided Lewisohn was guilty was clearly erroneous. Mr. Rowe testified to that fact as a conclusory inference drawn by him from what he overheard the woman say in the jury room. At the discretion of the habeas justice, particularly in the absence of any timely objection, Mr. Rowe's testimony in the form of an inference was properly received in evidence since it was "(a) rationally based on the perception of the witness and (b) helpful to ... the determination of a fact at issue." M.R.Evid. 701.

■ The habeas justice found Mr. Rowe to be "frank, deliberate and thoughtful in his testimony" and described him as "a most credible witness." To the justice, Mr. Rowe's "recall appear[ed] to be clear, unselective and accurate." As an appellate court, we must give due regard to the fact that the habeas justice had a unique opportunity to observe the demeanor of the witness on the stand and to take account of those important testimonial subtleties unaccessible to this court in reviewing a cold transcript. The weight to be given the testimony of any witness is in large measure a reflection of the impressions gained by the factfinder as to his sincerity, memory, and ability to express himself. Where, as here, the justice hearing the live witness specifically articulates his assessment of that witness's credibility, the appellate court must give particular deference to that assessment.

Before the State can deprive a citizen of his liberty for the commission of a criminal offense, "the truth of every accusation, whether preferred in the shape of an indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours, indifferently chosen and superior to all suspicion." 4 W. Blackstone, *Commentaries on the Laws of England* 349 (Portland 1807). Chief Justice Marshall, sitting at the trial of Aaron Burr, described the necessary impartiality of a juror as follows:

[L]ight impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him.

*United States v. Burr*, 25 Fed.Cas. 49, 51 (C.C.D.Va. 1807) (No. 14,692g). In the case at bar, however, the habeas justice could not even guess whether the woman juror described by Mr. Rowe held only "light impressions" of petitioner's guilt or rather "strong and deep impressions." Her failure, according to Mr. Rowe's testimony, to respond truthfully to voir dire foreclosed any investigation on that score by the presiding justice or trial counsel, and her subsequent death prevented any after-the-fact probing by the habeas justice of the likely consequences of her bias.

■ Of course, "[i]t is not required ... that [a juror] be totally ignorant of the facts and issues involved [in a case]." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). All that can be required is that the juror be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723, 81 S.Ct. at 1643; *Spies v. Illinois*, 123 U.S. 131, 8 S.Ct. 21, 31 L.Ed. 80 (1887). However, any person who prior to selection for jury service has formed a "positive and decided opinion" is incompetent to judge the guilt or innocence of the accused. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878). The habeas justice had evidentiary support for concluding that

the juror described by Mr. Rowe held such a "positive and decided opinion" and nonetheless hid that fact from judge and counsel on voir dire.

On the record available to the habeas justice and to us on appeal, we cannot say that he was clearly erroneous in finding as a fact that one of the persons picked for the Lewisohn jury already thought him guilty, and that she failed to disclose her preconception during voir dire. Therefore, without more, this court must affirm the decision below that petitioner is entitled to a new trial.

The entry shall be:

Judgment affirmed.

Remanded to the Superior Court for entry of an order that the indictment against said James E. Lewisohn charging him with the homicide of said Roslyn S. Lewisohn be dismissed with prejudice and that he be released from custody unless the State shall cause him to be retried thereon within ninety (90) days of the Law Court decision herein.

All concurring.