**Rexford PIERCE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 6, 1983.

Decided Aug. 3, 1983.

Richardson, Tyler & Troubh, Jeffrey A. Thaler (orally), Portland, for plaintiff.

William R. Stokes (orally), Charles K. Leadbetter, Asst. Attys. Gen., James E. Tierney, Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, ROBERTS, CARTER* and WATHEN, JJ., and DUFRESNE, A.R.J.

ROBERTS, Justice.

Rexford Pierce appeals from the denial of his post-conviction petition by the Superior Court, Sagadahoc County. We address only the petitioner's contentions that defense counsel's inadequate pretrial investigation and trial strategy constituted ineffective assistance of counsel. We affirm the judgment of the Superior Court.

### I. Procedural History and Factual Background

On September 4, 1979, Pierce was indicted for one count of gross sexual misconduct, Class C, 17–A M.R.S.A. § 253(2)(B) (1983). In September of 1980, Pierce was convicted and sentenced to serve two years in the Maine State Prison. Pierce subsequently

---

* CARTER, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

filed a motion for a new trial pursuant to Rule 33, M.R.Crim.P. After a hearing, the motion was denied. Pierce then appealed both the conviction and the motion for a new trial. On December 11, 1981, we denied the direct appeal. *State v. Pierce*, 438 A.2d 247 (Me.1981). We summarized the facts which led to the conviction:

> Kathleen Van Buren, the [victim], was fourteen years old when she chose to leave the home of her natural father in December 1978 to live with her natural mother, defendant Sandra Van Buren, and Sandra's boyfriend, defendant Rexford Pierce. Kathleen testified that on January 21, 1979, the defendants approached her in the bathroom and took her to the bedroom. Sandra told her not to worry. Pierce then massaged both Kathleen and Sandra. Pierce next announced his intention to have sexual intercourse with Kathleen, who said "No". The defendants went into the next room and argued. Kathleen could see them. Pierce raised his hand and told Sandra to get out of his way. Kathleen then submitted to intercourse with Pierce, because she was afraid that he would hit her mother. Sandra Van Buren helped Pierce complete the act of penetration. Both defendants, however, testified [at trial] that this incident never occurred.

*Pierce*, 438 A.2d at 249–50.

Pierce began serving his sentence soon after the denial of the direct appeal. On December 28, 1981, Pierce filed *pro se* a Petition for Post-Conviction Review pursuant to 15 M.R.S.A. §§ 2121–2132 (Supp. 1982–1983) and a Motion for Appointment of Counsel. After counsel was appointed, the petition was amended to allege several counts of ineffective assistance of trial counsel.

An evidentiary post-conviction hearing was held in Superior Court. Applying the standard articulated in *Lang v. Murch*, 438 A.2d 914 (Me.1981), the justice determined that the petitioner failed to demonstrate that his attorney's conduct fell measurably below that which might be expected from an ordinary fallible attorney and denied the petitioner an otherwise available substantial ground for relief. The justice denied the petition.

## II. Claims of Ineffective Assistance of Counsel

■ In *Lang v. Murch*, 438 A.2d 914 (Me.1981), the Law Court articulated the "reasonably competent assistance" standard for determining claims of ineffective assistance of counsel. The standard provides:

> (1) Has there been serious incompetency, inefficiency or inattention of counsel—performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney? (2) Has such ineffective representation by counsel likely deprived the defendant of an otherwise available substantial ground of defense?

438 A.2d at 915. That standard is meant to be applied on a case-by-case basis. *United States v. DeCoster*, 624 F.2d 196, 203 (D.C. Cir.1979); *True v. State*, 457 A.2d 793, 795 (Me.1983). We examine the post-conviction justice's findings under the clearly erroneous standard to determine whether there is any competent evidence to support those findings. *Id.* (citing *Lewisohn v. State*, 433 A.2d 351, 354 (Me.1981); *Smith v. State*, 432 A.2d 1246, 1247 (Me.1981)). Any finding not specifically articulated will be presumed to be consistent with the result reached by the Superior Court. *True*, 457 A.2d at 795.

### A. Pretrial Investigation

We first address the contentions that defense counsel allegedly failed to interview proposed witnesses and to investigate the background of the victim. The post-conviction findings that defense counsel's alleged actions and omissions did not fall measurably below that which might be expected from an ordinary fallible attorney are not clearly erroneous.

Pierce submitted to his trial attorney a list of names of twenty-eight potential witnesses. Defense counsel testified at the post-conviction hearing that he personally spoke to five of the potential witnesses on

the list. At the post-conviction hearing, defense counsel further stated that some of the people on the list did not want to talk with him because he was representing Pierce, others did not want to get involved, and still others were extremely biased. Defense counsel testified that other potential witnesses were children of "clients of ours who were predominently handled by my then partner ... [W]e discussed things ... If the witness was not good, that would be the end of it." Finally, according to defense counsel, there were other people "who based on my prior knowledge of them we didn't bother to interview."

With regard to the investigation of the background of the victim, defense counsel was supplied with names of three of the victim's boyfriends. Defense counsel testified that he never personally contacted any of the victim's boyfriends. According to defense counsel, the boyfriend who allegedly had sexual intercourse with Kathleen had an extensive criminal record and one of the other of her boyfriends was "wacky." Defense counsel, however, did interview the victim. He also requested a full psychological examination. That investigation, according to defense counsel, was harmful to Pierce's case. In addition, defense counsel interviewed witnesses who described the victim as a tease, a brat, and a very mouthy girl. He obtained information that the victim's grades remained the same during the period of alleged sexual activity. Defense counsel discovered that the victim did enjoy freedom of movement during this period; she went to school, to a dance, and to visit her father. He also found that the victim did not like Pierce and did not want her mother to be involved with Pierce. All of this information was utilized at trial to impeach the victim's testimony.

■ Defense counsel has a duty to conduct a reasonable amount of pretrial investigation. *E.g., Washington v. Strickland,* 693 F.2d 1243, 1251 (5th Cir.1982); *Decoster,* 624 F.2d at 209. The amount of pretrial investigation necessary to comply with that duty cannot be measured precisely. *Strick-*

*land,* 693 F.2d at 1251. Appellate courts must assess the conduct from the perspective of counsel, not from hindsight, taking into account all the circumstances of the case as known to counsel. *Washington v. Watkins,* 655 F.2d 1346, 1356 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

■ There is sufficient evidence to demonstrate that defense counsel knew of many of the people on the list. From this prior knowledge, he determined whether these people would be helpful to Pierce's case and whether they should be interviewed. There is also evidence that defense counsel conducted an investigation of the victim's background and used that evidence to impeach the victim. Although counsel might have interviewed more witnesses and investigated further the background of the victim, the post-conviction justice properly concluded that the pretrial investigation conducted by defense counsel did not fall measurably below that of an ordinary fallible lawyer.

### B. Trial Strategy

We address only the following contentions regarding trial strategy: (1) that defense counsel failed to produce Maxine Pierce as a witness at trial or to obtain a deposition of her testimony, (2) that defense counsel failed to object to evidence of "other" sexual activity, (3) that defense counsel permitted evidence of sex-related material in Pierce's home, and (4) that defense counsel's cross-examination of the victim was prejudicial to the defendant. Again we determine that the post-conviction findings were not clearly erroneous.

■ Because trial strategy involves the "highest levels of professional judgment" based upon "counsel's knowledge, training, experience, and wisdom," we afford great deference to counsel in making those tactical decisions. *True,* 457 A.2d at 796. We therefore review any questions involving strategy to determine whether such strategy was manifestly unreasonable, that is, a

strategy which resulted in a loss of a substantial ground of defense. *Commonwealth v. Rondeau,* 378 Mass. 408, 411–13, 392 N.E.2d 1001, 1003–04 (1979).

### 1. *Maxine Pierce*

The petitioner claims that the court erred in ruling upon counsel's failure to produce Maxine Pierce or her deposition. Maxine Pierce, the petitioner's former wife, visited Pierce, Sandra and Kathleen Van Buren soon after the crime took place. She stayed at the Pierce home for two weeks. Maxine normally resided in Florida. In a letter to Sandra's attorney, Maxine wrote that when she was in Maine, Kathleen said that Pierce was sexually abusing her. Further she wrote that Kathleen liked her and confided in her with regard to the crime. Maxine felt that Kathleen was mentally disturbed and was causing trouble for others. The letter intimated that in Maxine's opinion Kathleen fabricated the story.

Pierce paid defense counsel to travel to Florida to interview Maxine Pierce. His notes of the interview reflect that Maxine reiterated many of the comments she made in her letter. Although defense counsel believed that Maxine would be willing to testify, he was unable to arrange her appearance. He obtained two continuances on the basis that Maxine's physical problems prevented her from making the trip to Maine. His later attempts to notify Maxine apparently failed. Defense counsel testified that he wanted Maxine's testimony because it contradicted an incriminating remark that Pierce made to the police. He further testified that he believed Maxine was hiding from him.

■ The record supports the justice's finding that defense counsel reasonably believed that Maxine attempted to hide. Defense counsel had contacted her lawyer in Florida; he could not find her. Defense counsel sent her a notice of the trial. Based upon these facts, the justice's finding is not clearly erroneous. *See True,* 457 A.2d at 797.

■ In addition, it is not clear that Maxine would have been permitted to testify that in her opinion Kathleen had fabricated the story. Under Rule 701, M.R.Evid., the determination of whether the opinion evidence is rationally based upon the perception of the witness and is helpful to the determination of the fact at issue is within the discretion of the trial justice. The justice has the opportunity to observe the witness. *See Lewisohn,* 433 A.2d at 355; *State v. Small,* 411 A.2d 682, 687 (Me.1980) (Nichols, J., concurring); *see also* Field & Murray, *Maine Evidence* § 701.1 at 168–70 (1976).

Under the circumstances, the petitioner has failed to prove that defense counsel's failure to produce Maxine Pierce or her testimony at trial was manifestly unreasonable. *True,* 457 A.2d at 797.

We have noted before that a trial counsel is faced with many decisions as to strategy which arise during trial. *Bennett v. State,* 161 Me. 489, 214 A.2d 667 (1965). The evaluation of the probable effect upon the jury of expected testimony of proposed witnesses, the conclusion as to whether their appearance can be expected to benefit or injure his client's cause and the decision whether or not to call them to testify must necessarily be matters for the trained professional judgment of the attorney.

*Lizotte v. State,* 247 A.2d 98, 100 (Me.1968).

### 2. *Other Sexual Activity*

The petitioner contends that the court erred in ruling upon defense counsel's failure to object to evidence of other alleged sexual activity between the defendant and the victim. Defense counsel did not attempt to exclude evidence of additional sexual activity beyond the act giving rise to the indictment. The victim testified at trial that the sexual activity continued for "quite a while" or for "over two months." She further testified that Pierce and her mother bought her birth control pills. Defense counsel testified that he did not object to such testimony because he wanted that evi-

dence to impeach the victim's testimony that her grades had suffered during the period of alleged sexual activity.

Under Rule 404(b), M.R.Evid., evidence of a wrongful act for which the defendant has not been convicted is not admissible to prove that the defendant acted in conformity with his character. Such evidence, however, may be admissible for other purposes.[1] Under our decisions prior to the adoption of the Maine Rules of Evidence, evidence that the defendant engaged in sexual activity with the victim named in the indictment, whether prior to or subsequent to the alleged offense but tending to demonstrate a continuity of the activity, was admissible to prove the relationship and mutual disposition of the parties. *See, e.g., State v. Beckwith,* 158 Me. 174, 177, 180 A.2d 605, 607 (1962); *State v. Seaburg,* 154 Me. 162, 163–70, 145 A.2d 550, 551–55 (1958); *State v. Williams,* 76 Me. 480, 481 (1884); *see also* 2 J. Wigmore, *Evidence,* § 398 at 445 (Chadbourn ed. 1979). We find that this principle is still valid today.

Under the circumstances of this case, defense counsel used the claim of continued sexual activity in connection with evidence that the victim's grades remained stable during that period to impeach the victim's testimony. The evidence of continued sexual activity could have been admitted to show the relationship between the victim and the defendant. Defense counsel attempted to use that admissible evidence to his advantage. The post-conviction finding relating to that tactical decision was not clearly erroneous.

### 3. Evidence of Sex-Related Material

The petitioner contends that the court erred in ruling upon counsel's use of evidence of sex-related materials. Ernest and Laura Ward testified that the victim wanted to and did see the pornographic films shown at the Pierce home. They tes-tified that there were dirty books in the bathroom. Laura Ward stated that she had taken a "dildo" to the Pierce home as a joke. Defense counsel testified that he introduced such evidence to show that because of the material with which the victim was acquainted, she was capable of fabricating such a story. As trial strategy, the petitioner must show that counsel's decision to include evidence of the sex-related materials was "manifestly unreasonable." *True,* 457 A.2d at 796 (citing *Rondeau,* 378 Mass. at 413, 392 N.E.2d at 1004). Under the circumstances, counsel's strategy was not manifestly unreasonable. Such evidence was critical to counsel's defense theory. By showing that she was exposed to sex-related material, the defense theory that the victim fabricated the story became more credible.

### 4. Cross-Examination of the Victim

Finally, the petitioner challenges the court's ruling upon the strategy of defense counsel during cross-examination of the victim. Counsel's strategy at trial consisted in part of attempting to present inconsistencies in the victim's testimony. He did so by requiring the victim to give graphic and detailed descriptions of the act including the size of Pierce's genitals and the appearance of his underpants.

Defense counsel further testified that he and Sandra's attorney had developed a "Mutt & Jeff" routine, Sandra's attorney being the "grandfatherly type" and Pierce's defense counsel "coming down hard on her." Sandra's attorney testified that no discussions of strategy had taken place between them. He further expressed his opinion that counsel's questions were unproductive and that he would have conducted the cross-examination differently.

The issue presented for appellate review, however, is not whether another

---

1. Such evidence is admissible if offered for another purpose such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or identity.

M.R.Evid. 404(b) advisers' notes. In addition, such evidence of bad acts may be admissible to rebut prior evidence of good character. M.R. Evid. 608.

attorney would have conducted a different strategy. *See True,* 457 A.2d at 796. Rather, the question is whether the strategy was manifestly unreasonable. Defense counsel attempted to show inconsistencies in the victim's testimony. That strategy was legitimate. Defense counsel was not ineffective merely because that strategy did not yield a successful result. The strategy was not manifestly unreasonable and the implied finding of the justice was not clearly erroneous.

We have examined all other contentions of the petitioner and have found them to be without merit.

The entry is:

Judgment affirmed.

All concurring.