**646**

STATE of Maine

v.

Fred THORNE.

Supreme Judicial Court of Maine.

Argued March 11, 1985.

Decided April 2, 1985.

Michael Povich, Dist. Atty., Richard Bergeron, Asst. Dist. Atty. (orally), Machias, for plaintiff.

Earl S. Tyler, Jr. (orally), Milbridge, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Fred Thorne appeals from a judgment entered on a jury verdict in the Superior Court, Washington County, convicting him of criminal threatening with a firearm, 17–A M.R.S.A. § 209, and reckless conduct with a firearm, 17–A M.R.S.A. § 211. On appeal, defendant alleges error with respect to evidentiary rulings relating to the admissibility of certain opinion evidence and a hospital report, the denial of a motion for a bill of particulars, and the presiding justice's instructions to the jury regarding the defense of justification. We deny the appeal and affirm the convictions.

I.

In the evening of October 6, 1982, two child protection case workers with the Maine Department of Human Services in Machias were instructed to check on the welfare of two children. The children's mother had been drunk that afternoon and the staff at the hospital where she had been treated felt that she was in no condition to care for them. She had been taken from the hospital by the defendant to his home in Marshfield. Owing to previous problems with him, the caseworkers requested the company of a state trooper. Trooper Stephen Pickering drove behind the caseworkers from Machias to the defendant's home. He saw the house lights go out as they parked in the driveway. Leaving the two caseworkers there, Pickering knocked loudly at one door, calling for the defendant by name. He shone his flashlight through a window and saw a child, apparently asleep on a couch. He went to the door on the opposite side of the house, at which he repeated the knocking and calling. At no time did he identify himself as a police officer because he did not want unduly to "agitate" the defendant who had a reputation for hostility to the police. He received no answer.

Shining his light through a window, Pickering saw the feet of someone lying on a bed. He opened the door, calling to the defendant that there were D.H.S. workers who wanted to speak with him. Pickering walked far enough into the house to see the defendant, fully dressed, lying on the bed with his eyes closed, and two women near him in the room. Pickering called to the defendant but still received no response, so he went outside to confer with the D.H.S. workers. They asked him to ask for the children's mother, since their business was with her. Shining his flashlight ahead of him, Pickering re-entered the house, walked to the bedroom door, and called her name. There was still no response, so he began to leave.

He then heard a noise, turned, and saw the defendant walking towards him. He again told the defendant that two caseworkers wanted to speak with him. As he said that, Pickering saw the defendant reach into a cupboard and take out a dark object. One of the women in the house grabbed the defendant, saying, "No. Don't do it." Pickering turned and fled out the door shouting to the caseworkers to "get out of here." He heard a shot as he jumped off the porch. He dropped to the ground and looked up. It was too dark to see anyone, but he heard steps on the porch. He heard another shot and simultaneously saw the muzzle flash from the gun. Pickering did not return the fire because he could not see the person firing the gun and because there were other occupants in the house. He was not hit by either shot.

After these gunshots, he heard someone stepping back into the house and then heard the defendant begin to yell obscenities including threats to "kill the pig" who had just "broken into the house." The tirade continued for more than three hours, during which one more shot was fired, apparently at random, and the defendant threw cans of food at the assembled police cruisers to "feed the piggies." After one a.m. the defendant admitted a trooper with whom he was acquainted and who eventually subdued him, seizing a .22 caliber revolver.

## II.

■ The defendant's first claim of error is that the Superior Court wrongly denied his motion for a bill of particulars. The defendant was indicted on November 4, 1982. He filed a request for discovery on November 19, 1982, and the motion for a bill of particulars on December 1, 1982. Both were heard together on January 3, 1983, by which time the defendant had already received partial discovery from the State. The Court granted discovery, but denied the bill of particulars, stating that the defendant could get whatever he needed through discovery. The defendant complains here that the discovery was, in fact, inadequate. M.R.Crim.P. 16(c)(2) permits a bill of particulars if the court "is satisfied that counsel has exhausted his discovery remedies under this rule or it is satisfied that discovery would be ineffective to protect the rights of the defendant." In this case, the motion was made while discovery was in process, and at the same time as the formal request for discovery was granted. The defendant had not exhausted discovery when he made his motion, nor did he then argue to the court that discovery would be ineffective. He did not renew his motion after discovery was complete. Because he did not bring himself within the language of Rule 16(c)(2), it was not an abuse of discretion for the court to decline to direct the filing of a bill of particulars.

## III.

■ The defendant next argues that the court committed prejudicial error in admitting two items of testimony into evidence. The first was Trooper Pickering's opinion regarding the direction of the second shot, based only on his view of the muzzle flash in the dark. The defendant especially objects to Pickering's conclusion that, had he been standing, the shot would have hit him in the "chest-abdomen area."

"Under Rule 701, M.R.Evid., the determination of whether the opinion evidence is rationally based upon the perception of the [lay] witness and is helpful to the determi-

nation of the fact at issue is within the discretion of the trial justice." *Pierce v. State*, 463 A.2d 756, 760 (Me.1983). Before stating his opinion at trial the trooper described his perception of the muzzle flash as being "a roundish ball of light. It was reddish-orange and yellow with like a stream coming out from the center of it of more intense light. As I was looking at it, it looked like a ball of fire coming in my direction." In these circumstances, the trial court did not abuse its discretion in finding that the opinion evidence was admissible under M.R.Evid. 701.

## IV.

■ The defendant's contention regarding the admission of the report received from the hospital concerning the condition of the children's mother, whom the trooper and caseworkers had gone to see, also fails, for the same reason that his claim of error in the instructions to the jury does. His position throughout the trial was that he was justified in using deadly force to prevent what he reasonably believed to be a criminal trespass in his home. *See* 17-A M.R.S.A. §§ 104(3)(B) and (4). Since the intruder was a police officer, the State contended that his entry could not have been a criminal trespass because it was justified under 17-A M.R.S.A. § 102. The trial court formulated instructions that, in effect, struck a balance between the two sections. However, we need not address whether the officer had probable cause to enter the home generated by the jeopardy of the children because of an intoxicated parent, or the circumstances in which the defendant might have been justified in using deadly force to remove him. Trooper Pickering was not in the house when the defendant fired the shots. While he may have been still crossing the porch when the first shot was fired, he was clearly out in the yard at the time of the second and third shots. Whether or not the justification of defense of a dwelling place could be invoked for the first shot, it certainly could not be asserted where the evidence fails to

support any reasonable belief that the trooper was committing or was likely to commit a crime *within the dwelling place.* 17–A § 104(3)(B)(2). The jury could rationally have found the defendant guilty of criminal threatening with the use of a firearm on the basis of the second shot alone. It could also rationally have found from defendant's firing of a gun in the trooper's direction that the defendant was guilty of reckless conduct with a firearm.

The defendant's argument that the court improperly permitted Pickering and one of the D.H.S. caseworkers to offer the hearsay report received from the hospital concerning the condition of the woman whom they had gone to see is therefore without merit. Whether or not the officer was justified in entering the home solely on the basis of the report is irrelevant since the shots were fired when he was no longer within the dwelling place.

We find no merit in the other issues raised by the defendant. Accordingly, we affirm the judgments.

The entry is:

Judgments affirmed.

All concurring.