## Sherman WHITMORE

v.

## STATE of Maine.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1996.

Decided Jan. 30, 1996.

---

Jeffrey W. Langholtz (orally), Biddeford, for Plaintiff.

Michael P. Cantara, District Attorney, David Gregory (orally), Assistant District Attorney, Alfred, for the State.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

The State appeals from the judgment entered in the Superior Court (York County, *Saufley, J.*) granting post-conviction relief to Sherman Whitmore on the basis of ineffective assistance of counsel. The State contends that the court's finding of ineffective assistance of counsel was clearly erroneous. We affirm the judgment.

Sherman Whitmore was indicted in 1989 on a charge of rape in violation of 17–A M.R.S.A. § 252 (1983 & 1988).[1] Whitmore's jury trial largely focused on the credibility of witnesses. The victim testified that Whitmore offered her money to have sexual intercourse with him, that she had refused, and that she submitted to sexual intercourse with Whitmore only because she feared Whitmore would carry out his threat that if she did not submit she never would see her baby again. Whitmore testified the victim had agreed to have sexual intercourse with him in exchange for $50. He contended that the absence of evidence of resistance by the victim was demonstrative of her consent. To counter this defense, the State produced an expert witness who testified that the victim's passive reaction to her sexual abuse was consistent with the "disassociative disorder" from which she suffered and which was typical among persons who have a history of sexual abuse. *See generally, State v. Whitmore,* 591 A.2d 244, 245 (Me.1991). Whitmore was convicted

---

**1.** On January 24, 1989, the date of the alleged offense, section 252, repealed by P.L. 1989, ch. 400, § A(3), provided in pertinent part:

A person is guilty of rape if he engages in sexual intercourse ... [w]ith any person, not his spouse, and the person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E.

Section 251(1)(E) provided:

"Compulsion" means physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.

of rape. We affirmed that conviction on direct appeal. *Id.*

Whitmore petitioned for post-conviction relief claiming trial counsel's conduct was ineffective because (1) he failed to obtain the medical records relied on by the State's expert witness, which if obtained and reviewed would have permitted him to impeach the State's expert; (2) he failed to investigate individuals with direct knowledge of relevant facts; and (3) he failed to object at trial or raise on appeal instances of prosecutorial misconduct that deprived Whitmore of a fair trial.

The court's focus in the hearing on Whitmore's petition and the basis of post-conviction relief was the trial counsel's preparation for and cross-examination of the State's expert. The court found that trial counsel's failure to obtain and review the records and reports underlying the expert's testimony fell "measurably below the standards expected of an ordinary and fallible defense attorney." The court concluded that as a result of this deficiency Whitmore was deprived of a substantial ground of defense because he was precluded from effectively cross-examining and impeaching a key prosecution witness. The State appeals.

■ Article I, section 6 of the Maine Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant's right to effective assistance of counsel. "To guarantee this right [this Court employs] a standard of 'reasonably competent assistance.'" *Tribou v. State*, 552 A.2d 1262, 1264 (Me.1989). Under this standard, the petitioner is entitled to relief if he demonstrates (1) that counsel's performance falls measurably below that of an ordinary fallible attorney and (2) that this substandard performance likely deprived the defendant of an otherwise available substantial ground of defense. *See Lagassee v. State*, 655 A.2d 328, 329 (Me.1995). "The standard does not lend itself to categorical rules but rather is meant to be applied on a case-by-case basis. . . ." *True v. State*, 457 A.2d 793, 795 (Me.1983). The court in applying the standard must take into account all the circumstances of the case as known to the trial counsel. *Pierce v. State*, 463 A.2d

756, 759 (Me.1983). In this "fact-laden atmosphere," *True v. State*, 457 A.2d at 795, we will not set aside the findings and conclusions of the post-conviction court unless they are clearly erroneous and not supported by any competent evidence in the record. *State v. Jurek*, 594 A.2d 553, 555 (Me.1991).

■ We have repeatedly stated that defense counsel owes a duty to his client to conduct a reasonable investigation. *See, e.g., Lagassee v. State*, 655 A.2d 328, 329–30 (Me.1995); *Kimball v. State*, 490 A.2d 653, 657 (Me.1985); *Doucette v. State*, 463 A.2d 741, 745 (Me.1983). In the present case, the State concedes that the post-conviction court correctly found that trial counsel's failure to obtain records examined by the State's expert concerning the victim's medical and psychological history fell measurably below the minimum standard of performance that might be expected of an ordinary fallible attorney. Accordingly, the remaining issue is whether there is competent evidence in the record to support the post-conviction court's determination that trial counsel's deficiencies deprived Whitmore of a substantial ground of defense.

■ To establish that he has been deprived of a substantial ground of defense, Whitmore must demonstrate that trial counsel's performance likely affected the outcome of the trial. *True v. State*, 457 A.2d at 797. "[A] substantial defense [is] not limited to an affirmative defense or the presentation of an alibi defense." *Curry v. United States*, 498 A.2d 534, 542 (D.C.1985). Thus, a "substantial defense" includes admission of evidence that "substantially will discredit the government's case-in-chief" and a substantial defense is lost if counsel fails to "impeach a key government witness with highly credible evidence." *Godfrey v. United States*, 454 A.2d 293, 303 (D.C.1982).

The testimony at the post-conviction hearing established that the records Whitmore's trial counsel failed to obtain and review contained information contradicting the testimony and diagnosis of the State's expert. The record indicated that the victim (1) had been diagnosed as having a conduct disorder and a personality type marked by a tendency to act

out and be combative and (2) had, contrary to the conclusion of the State's expert's conclusion, demonstrated the capacity to "fight back against other kinds of abuse." The post-conviction court heard testimony that the medical records were

> replete with mentions of just classical schizophrenic like symptoms of hallucinations, auditory and visual. Dilusions [sic]. Believing that people were like helpers at Sweetser approaching her. She would misperceive them as being people who are, had been or were about to be sexually abusing her....

Finally, the court heard expert legal testimony that the information contained in these records would have permitted defense counsel to effectively impeach the credibility of the State's expert and that his failure to do so denied the defendant of a substantial ground of defense.

The State contends that despite the foregoing evidence, the court had no competent evidence before it to support its conclusion that the introduction of the contradictory information would have influenced the outcome of the trial. In support of this contention, the State points to the court's own finding that, even had she been subjected to a vigorous cross-examination, the State's expert would not have been moved from her diagnosis and therefore the value of her testimony would not have been diminished.

This argument underestimates the impact of the introduction of the contradictory material. While it may be true that the State's expert would have held firm to her diagnosis even if she had been subjected to a vigorous cross-examination, the "quality" of her testimony could have been greatly diminished. In this case the court heard competent testimony from both legal and medical experts that if the contradictory information contained in the report had been introduced at trial the State's expert would have faced the onerous task of reconciling this contrary information with her diagnosis.

The relative credibility of the victim and the defendant was the central issue for resolution by the jury. As the trial court points out, "Mr. Whitmore's entire defense rested on creating in the minds of the jurors a reasonable doubt that [the victim] was credible in her statement that he had threatened her child." The State offered the testimony of its expert to explain the victim's atypical response to her abuse and thereby bolster her credibility. As we have previously emphasized, "[E]xpert testimony offered to explain ... the conduct of the victim can have the effect of bolstering that person's credibility. Such evidence can have a profound impact on the outcome of the trial...." *State v. Black,* 537 A.2d 1154, 1156 (Me.1988). Because trial counsel failed to obtain the medical records underlying the testimony of the State medical expert, highly credible impeachment evidence was lost and trial counsel was unprepared to effectively cross-examine and impeach the State's expert. We find no clear error in the court's finding that trial counsel's performance fell measurably below that of an ordinary fallible attorney and that Whitmore was likely deprived of an otherwise available substantial ground of defense.

The entry is:

Judgment affirmed.

All concurring.