STATE OF MAINE
PENOBSCOT, SS.

FILED AND ENTERED
SUPERIOR COURT

JUN 0 5 2000

PENOBSCOT COUNTY

SUPERIOR COURT
Docket No. CR-97-597
PTP-PEN-6/5/2000

DONALD L. GARBRECHT
LAW LIBRARY

JUN 7 2000

DAVID GORDON FLEMING,      )
    Petitioner,      )
               )
               )
               )
    v.           )    **DECISION AND JUDGMENT**
               )
               )
STATE OF MAINE,      )
    Respondent.      )

This matter is before the Court on David Fleming's petition for post conviction review.

## FACTS

Following a jury verdict of guilty as charged, Petitioner on June 2, 1995, was adjudged guilty of the intentional or knowing murder of Lisa Garland, in violation of 17-A M.R.S.A. § 201(1)(A)(1983), and sentenced to life imprisonment, to be served consecutively to an 80-year term of imprisonment previously imposed by the York County Superior Court. See State of Maine v. David Gordon Fleming, CR-93-144 (Me. Super. Ct. June 2, 1995), aff'd 698 A.2d 503 (Me. 1997).[1] At trial, the State presented the testimony of numerous lay witnesses who established the location and behavior of the victim and Fleming on the night of the victim's disappearance. In addition, the State presented expert testimony concerning DNA evidence that showed the likelihood that semen found in the victim's body belonged to Fleming.

---

1. In a separate case in York County, Fleming pled guilty to the rape and attempted murder of a fifteen-year-old girl in Cape Neddick on July 12, 1991. See State v. Fleming, 644 A.2d 1034, 1035 (Me. 1994).

1

The State also presented expert testimony about carpet fibers found on the victim's socks and a distinctive type of wood chip found in the victim's body bag, both of which linked Fleming to the victim.

The Law Court upheld Fleming's conviction on appeal, rejecting several of Fleming's grounds for relief. The court established that the overall theory and techniques of DNA profiling are scientifically reliable for admission into evidence if conducted with the appropriate laboratory standards and controls. See Fleming, 698 A.2d at 506-07. The court also approved the application of the product rule in calculating the statistical component of DNA match evidence. See id. at 507-08. The court concluded that in Fleming's case the probative value of the DNA evidence substantially outweighed any danger of unfair prejudice and held that the trial court did not commit obvious error by admitting evidence of a prior DNA test obtained in a separate investigation. See id. at 508-09.

Fleming now seeks post conviction relief on the ground that he received ineffective assistance of counsel at trial and at sentencing, in violation of Article I, Section 6 of the Maine Constitution and the Sixth Amendment of the U.S. Constitution. Fleming asserts that his attorney, John Nale, failed to take numerous steps that affected the outcome of his trial and his sentencing.

## DISCUSSION

To obtain post conviction relief based on ineffective assistance of counsel, the petitioner must demonstrate:

> (1) that counsel's performance falls measurably below that of an ordinary fallible attorney and (2) that this substandard performance likely deprived the

2

defendant of an otherwise available substantial ground of defense. Whitmore v. State, 670 A.2d 394, 396 (Me. 1996). There is no steadfast rule to apply to determine whether an attorney's performance was substandard; the court must evaluate the performance of counsel on a case-by-case basis. Id.

Fleming first asserts that Attorney Nale failed to present evidence of mitigating factors at the sentencing hearing, in violation of requirements set forth in State v. Shortsleeves, 580 A.2d 145 (Me. 1990). In Shortsleeves, the Law Court reiterated the principle stated in State v. Anderson and Sabatino, Nos. 78-37, 78-40 (Me. App. Div. June 30, 1980), that a life sentence is never justified unless accompanied by aggravating circumstances. At least two such aggravating circumstances cited in Shortsleeves were present in this case -- the sexual abuse of the victim and Fleming's prior conviction for the 1991 murder in Cape Neddick.

The Shortsleeves case also established that the court must consider other mitigating circumstances that would require a sentence lesser than life imprisonment. See Shortsleeves, 580 A.2d at 150. The court there "found the defendant's youth and above-average intelligence to be mitigating factors, but their effect was diminished due to his already long criminal record. See id. at 150-51. Fleming does not demonstrate that any such mitigating circumstances existed in his case that would compel a sentence lesser than life imprisonment.[2] Contrary to

---

2. Fleming briefly alleges ineffectiveness by Attorney Nale because at the sentencing hearing he did not call any character witnesses or argue against life imprisonment. This court does not address these issues because Fleming fails to name any character witnesses available to testify on his behalf, and he does not cite any arguments that Nale could have raised against a life sentence.

Petitioner's contentions, Shortsleeves does not require the defense attorney to seek a psychological evaluation of the defendant. Notably, the Law Court in Shortsleeves upheld the defendant's life sentence regardless of "a 'truly devastating' report of a psychologist who spent several hours with [the defendant]." Id. In this case, the complete lack of mitigating circumstances and the existence of at least two aggravating factors supports the life sentence imposed on Fleming.

Fleming next claims that Attorney Nale failed to conduct adequate pretrial investigation into the use of DNA evidence and failed at trial to investigate the DNA procedures actually used in this case, especially the chain of custody, the gathering of samples, and police procedures. It is well established that defense counsel must "conduct a reasonable amount of pretrial investigation." Pierce v. State, 463 A.2d 756, 759 (Me. 1983). However, "[f]ailure to prove resulting prejudice precludes relief regardless of the quality of counsel's performance." State v. Jurek, 594 A.2d 553, 555 (Me. 1991). Fleming has not demonstrated either that Attorney Nale's pretrial investigation was so inadequate as to fall measurably below that of an ordinary fallible attorney or that counsel's performance resulted in any prejudice to Fleming. Such bald assertions of inadequacy unsupported by any facts that would demonstrate counsel's substandard performance or resulting prejudice do not constitute sufficient grounds for post conviction relief.

Fleming also contends that he received ineffective assistance of counsel based on Attorney Nale's failure to obtain expert testimony with regard to the DNA evidence, the carpet fibers, and the wood chips. An attorney's trial strategy, which

4

includes who to call as witnesses and what questions to ask witnesses, is reviewed "to determine whether such strategy was manifestly unreasonable, that is, a strategy which resulted in a loss of a substantial ground of defense." Pierce, 463 A.2d at 759-60. "To show prejudice from the failure to interview a witness, however, the petitioner must demonstrate both the witness's availability for trial and the nature of the witness's testimony." Jurek, 594 A.2d at 555. Fleming has not demonstrated either of these factors for any expert witness. Further, Fleming has not asserted any "substantial ground of defense" of which he was deprived because of Attorney Nale's failure to call expert witnesses. The record in fact reveals that Attorney Nale effectively cross-examined the State's expert witnesses, thereby reducing the damaging effect of the testimony upon Fleming's defense.

Fleming asserts several other inadequacies of Attorney Nale's trial strategy, specifically his failure to investigate an alternative suspect theory, his failure to impeach State witnesses Raymond Taylor and Lisa Hunt by revealing prior criminal convictions, and his failure to utilize the "best evidence" by using a typed police report to cross-examine Kitty Everett instead of her handwritten statements. Fleming has not shown that any of these omissions were "manifestly unreasonable" or "resulted in a loss of a substantial ground of defense." Pierce, 463 A.2d at 759-60. He has not demonstrated the existence of an alternative suspect theory, which would render Nale's performance manifestly unreasonable. Likewise, Fleming has not established that Raymond Taylor or Lisa Hunt have prior criminal convictions. Finally, Nale's use of a typed police report to cross-examine Kitty Everett is a minor

5

decision, which was certainly not manifestly unreasonable, and did not result in any loss of a substantial ground of defense.

Fleming maintains that he received ineffective assistance of counsel because Attorney Nale received information during the trial that one juror was allegedly informed of Fleming's criminal history by Kenneth Vigue, a prison guard, and Nale did not properly investigate possible juror bias. Fleming, however, does not demonstrate that any such conversation between a juror and a prison guard ever took place. In fact, Fleming acknowledges at page six of his Memorandum of Law in support of post conviction relief that Kenneth Vigue testified at the post conviction hearing that he did not speak to a juror involved in this trial. Accordingly, Fleming has failed to demonstrate the existence of any juror bias. As noted above, regardless of how poorly an attorney performs, a lack of proof of resulting prejudice precludes relief from conviction. See Jurek, 594 A.2d at 555.

Fleming briefly cites several other grounds for relief, which are completely lacking in any factual basis. Fleming asserts that Attorney Nale did not object to the display of prejudicial evidence from a prior case; however, Fleming does not specify to what evidence he refers or what prejudicial effect any such evidence had on his trial or sentencing. Fleming also contends that Attorney Nale refused to allow him to assist in his defense and convinced him not to testify at trial. Fleming offers no details or evidence, other than his own testimony at the post conviction hearing, of Nale's' refusal to allow Fleming to participate in his defense and does not explain how any such refusal, if any existed, prejudiced Fleming's case. The trial transcript

6

reveals that Justice Mead thoroughly informed Fleming about his right to testify and the ramifications of his decision. Fleming responded that he understood his rights and declined to testify. Fleming's assertions in hindsight that Attorney Nale prevented Fleming from testifying and participating at trial are not supported by any evidence in the record.

Fleming asserts several other grounds for relief in his Petition but does not expand on them in his brief. Accordingly, this court declines to address these other theories as they are completely unmeritorious. and unsupported by the evidence.

The entry is:

Petition for post conviction review is DENIED.

Dated: 6|2|00

Hon. Paul Pierson
JUSTICE, SUPERIOR COURT

7

Donald Macomber
Asst. A.G.
6 State House Station
Augusta, ME 04333

Donald Brown, Esq.
6 State St., Suite 308
Bangor, ME
04401

FILED AND ENTERED
SUPERIOR COURT

JUN 1 - 2000

PENOBSCOT COUNTY

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CR-97-597

DONALD L. GARBRECHT
LAW LIBRARY

JUN 19 2000

DAVID GORDON FLEMING, )
       Petitioner, )
)
)
v. )    **AMENDED DECISION AND JUDGMENT**
)
)    PTP-PEN - 6/16/2000
STATE OF MAINE, )
       Respondent. )

This matter is before the Court on David Fleming's petition for post conviction review.

## FACTS

Following a jury verdict of guilty as charged, Petitioner on June 2, 1995, was adjudged guilty of the intentional or knowing murder of Lisa Garland, in violation of 17-A M.R.S.A. § 201(1)(A)(1983), and sentenced to life imprisonment, to be served consecutively to an 80-year term of imprisonment previously imposed by the York County Superior Court. See State of Maine v. David Gordon Fleming, CR-93-144 (Me. Super. Ct. June 2, 1995), aff'd 698 A.2d 503 (Me. 1997).[1] At trial, the State presented the testimony of numerous lay witnesses who established the location and behavior of the victim and Fleming on the night of the victim's disappearance. In addition, the State presented expert testimony concerning DNA evidence that showed the likelihood that semen found in the victim's body belonged to Fleming.

---

1. In a separate case in York County, Fleming pled guilty to the rape and attempted murder of a fifteen-year-old girl in Cape Neddick on July 12, 1991. See State v. Fleming, 644 A.2d 1034, 1035 (Me. 1994).

1

The State also presented expert testimony about carpet fibers found on the victim's socks and a distinctive type of wood chip found in the victim's body bag, both of which linked Fleming to the victim.

The Law Court upheld Fleming's conviction on appeal, rejecting several of Fleming's grounds for relief. The court established that the overall theory and techniques of DNA profiling are scientifically reliable for admission into evidence if conducted with the appropriate laboratory standards and controls. See Fleming, 698 A.2d at 506-07. The court also approved the application of the product rule in calculating the statistical component of DNA match evidence. See id. at 507-08. The court concluded that in Fleming's case the probative value of the DNA evidence substantially outweighed any danger of unfair prejudice and held that the trial court did not commit obvious error by admitting evidence of a prior DNA test obtained in a separate investigation. See id. at 508-09.

Fleming now seeks post conviction relief on the ground that he received ineffective assistance of counsel at trial and at sentencing, in violation of Article I, Section 6 of the Maine Constitution and the Sixth Amendment of the U.S. Constitution. Fleming asserts that his attorney, John Nale, failed to take numerous steps that affected the outcome of his trial and his sentencing.

### DISCUSSION

To obtain post conviction relief based on ineffective assistance of counsel, the petitioner must demonstrate: (1) that counsel's performance falls below that of an ordinary fallible attorney and (2) that this substandard performance likely deprived

2

the defendant of an otherwise available substantial ground of defense. See State v. Brewer, 699 A.2d 1139, 1143-44 (Me. 1997). There is no steadfast rule to apply to determine whether an attorney's performance was substandard; the court must evaluate the performance of counsel on a case-by-case basis. See Whitmore v. State, 670 A.2d 394, 396 (Me. 1996).

Fleming first asserts that Attorney Nale failed to present evidence of mitigating factors at the sentencing hearing, in violation of requirements set forth in State v. Shortsleeves, 580 A.2d 145 (Me. 1990). In Shortsleeves, the Law Court reiterated the principle stated in State v. Anderson and Sabatino, Nos. 78-37, 78-40 (Me. App. Div. June 30, 1980), that a life sentence is never justified unless accompanied by aggravating circumstances. At least two such aggravating circumstances cited in Shortsleeves were present in this case -- the sexual abuse of the victim and Fleming's prior conviction for the 1991 attempted murder in Cape Neddick.

The Shortsleeves case also established that the court must consider other mitigating circumstances that would require a sentence lesser than life imprisonment. See Shortsleeves, 580 A.2d at 150. The court there "found the defendant's youth and above-average intelligence to be mitigating factors, but their effect was diminished due to his already long criminal record. See id. at 150-51. Fleming does not demonstrate that any such mitigating circumstances existed in his

3

case that would compel a sentence lesser than life imprisonment.[2] Contrary to Petitioner's contentions, Shortsleeves does not require the defense attorney to seek a psychological evaluation of the defendant. Notably, the Law Court in Shortsleeves upheld the defendant's life sentence regardless of "a 'truly devastating' report of a psychologist who spent several hours with [the defendant]." Id. In this case, the complete lack of mitigating circumstances and the existence of at least two aggravating factors supports the life sentence imposed on Fleming.

Fleming next claims that Attorney Nale failed to conduct adequate pretrial investigation into the use of DNA evidence and failed at trial to investigate the DNA procedures actually used in this case, especially the chain of custody, the gathering of samples, and police procedures. It is well established that defense counsel must "conduct a reasonable amount of pretrial investigation." Pierce v. State, 463 A.2d 756, 759 (Me. 1983). However, "[f]ailure to prove resulting prejudice precludes relief regardless of the quality of counsel's performance." State v. Jurek, 594 A.2d 553, 555 (Me. 1991). Fleming has not demonstrated either that Attorney Nale's pretrial investigation was so inadequate as to fall below that of an ordinary fallible attorney or that counsel's performance resulted in any prejudice to Fleming. Such bald assertions of inadequacy unsupported by any facts that would demonstrate counsel's substandard performance or resulting prejudice do not constitute

---

2. Fleming briefly alleges ineffectiveness by Attorney Nale because at the sentencing hearing he did not call any character witnesses or argue against life imprisonment. This court does not address these issues because Fleming fails to name any character witnesses available to testify on his behalf, and he does not cite any arguments that Nale could have raised against a life sentence.

sufficient grounds for post conviction relief.

Fleming also contends that he received ineffective assistance of counsel based on Attorney Nale's failure to obtain expert testimony with regard to the DNA evidence, the carpet fibers, and the wood chips. An attorney's trial strategy, which includes who to call as witnesses and what questions to ask witnesses, is reviewed "to determine whether such strategy was manifestly unreasonable, that is, a strategy which resulted in a loss of a substantial ground of defense." Pierce, 463 A.2d at 759-60. "To show prejudice from the failure to interview a witness, however, the petitioner must demonstrate both the witness's availability for trial and the nature of the witness's testimony." Jurek, 594 A.2d at 555. Fleming has not demonstrated either of these factors for any expert witness. Further, Fleming has not asserted any "substantial ground of defense" of which he was deprived because of Attorney Nale's failure to call expert witnesses. The record in fact reveals that Attorney Nale effectively cross-examined the State's expert witnesses, thereby reducing the damaging effect of the testimony upon Fleming's defense.

· Fleming asserts several other inadequacies of Attorney Nale's trial strategy, specifically his failure to investigate an alternative suspect theory, his failure to impeach State witnesses Raymond Taylor and Lisa Hunt by revealing prior criminal convictions, and his failure to utilize the "best evidence" by using a typed police report to cross-examine Kitty Everett instead of her handwritten statements. Fleming has not shown that any of these omissions were "manifestly unreasonable" or "resulted in a loss of a substantial ground of defense." Pierce, 463 A.2d at 759-60.

5

He has not demonstrated the existence of an alternative suspect theory, which would render Nale's performance manifestly unreasonable. Likewise, Fleming has not established that Raymond Taylor or Lisa Hunt have prior criminal convictions. Finally, Nale's use of a typed police report to cross-examine Kitty Everett is a minor decision, which was certainly not manifestly unreasonable, and did not result in any loss of a substantial ground of defense.

Fleming maintains that he received ineffective assistance of counsel because Attorney Nale received information during the trial that one juror was allegedly informed of Fleming's criminal history by Kenneth Vigue, a prison guard, and Nale did not properly investigate possible juror bias. Fleming, however, does not demonstrate that any such conversation between a juror and a prison guard ever took place. In fact, Fleming acknowledges at page six of his Memorandum of Law in support of post conviction relief that Kenneth Vigue testified at the post conviction hearing that he did not speak to a juror involved in this trial. Accordingly, Fleming has failed to demonstrate the existence of any juror bias. As noted above, regardless of how poorly an attorney performs, a lack of proof of resulting prejudice precludes relief from conviction. See Jurek, 594 A.2d at 555.

Fleming briefly cites several other grounds for relief, which are completely lacking in any factual basis. Fleming asserts that Attorney Nale did not object to the display of prejudicial evidence from a prior case; however, Fleming does not specify to what evidence he refers or what prejudicial effect any such evidence had on his trial or sentencing. Fleming also contends that Attorney Nale refused to allow him

6

to assist in his defense and convinced him not to testify at trial. Fleming offers no details or evidence, other than his own testimony at the post conviction hearing, of Nale's' refusal to allow Fleming to participate in his defense and does not explain how any such refusal, if any existed, prejudiced Fleming's case. The trial transcript reveals that Justice Mead thoroughly informed Fleming about his right to testify and the ramifications of his decision. Fleming responded that he understood his rights and declined to testify. Fleming's assertions in hindsight that Attorney Nale prevented Fleming from testifying and participating at trial are not supported by any evidence in the record.

Fleming asserts several other grounds for relief in his Petition but does not expand on them in his brief. Accordingly, this court declines to address these other theories as they are completely unmeritorious. and unsupported by the evidence.

The entry is:

Petition for post conviction review is DENIED.

Dated: 6|15|00

Hon. Paul Pierson
JUSTICE, SUPERIOR COURT

7