COMMONWEALTH *vs.* ROBERT MAINS.

Suffolk. January 6, 1978. — March 31, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Exceptions: failure to save exception; Self-defense; Disclosure of statements by witnesses; Assistance of counsel.

At a murder trial, there was no error in the judge's failure to give an instruction with respect to self-defense where the defendant neither requested such an instruction nor objected to the instructions given and where there was insufficient evidence to raise the issue. [735-736]

There was no merit to a defendant's contention that he was entitled to a new trial on the ground that the prosecutor improperly failed to disclose information about a prosecution witness. [736-738]

Where conduct of the defense counsel at a criminal trial did not deprive the defendant of an otherwise available substantial ground of defense, the defendant was not denied the effective assistance of counsel. [738]

INDICTMENT found and returned in the Superior Court on January 17, 1974.

---

The case was tried before *R. Sullivan*, J., and posttrial motions were heard by *Roy*, J.

*Robert L. Sheketoff* (*Norman S. Zalkind* with him) for the defendant.

*Philip T. Beauchesne*, Assistant District Attorney (*Joseph Ayoub, Jr.*, Legal Assistant to the District Attorney, with him) for the Commonwealth.

BRAUCHER, J.  The defendant appeals from his conviction of murder in the first degree and from the denial of his two motions for a new trial. He contends that (1) the trial judge incorrectly removed from the jury's consideration the issue of self-defense, (2) the prosecutor improperly failed to disclose information about a prosecution witness, and (3) the defendant was denied the effective assistance of counsel. We affirm the conviction.

There was evidence tending to prove the following. On the morning of Tuesday, October 2, 1973, the defendant, the victim and several others were at a construction site in Roxbury. The defendant and the victim argued about a woman, and the defendant said to the victim that "he was going home and he was coming back, and he better have his 'stuff' and make sure his 'stuff' would shoot." The defendant then left, about noon. He returned a little after 2 P.M., said to the victim, "I got my stuff, you got yours?" and shot the victim three times with a .38 caliber revolver. Another man, Lafayette Neal, said, "Stop, don't shoot him no more," and the defendant shot Neal in the hip. A police officer arrived shortly afterward and found the victim lying on the sidewalk with a .22 caliber semi-automatic pistol in his hand. There were eight live rounds of ammunition and there was no evidence that the pistol had been fired. The victim was dead of gunshot wounds on arrival at a hospital at 2:15 P.M.

The defendant testified that he was not at the site in the morning, and had never spoken to the victim. He testified that when he arrived at the site a little after 2 P.M. he walked up to the group of men and said, "How do you feel?" The victim reached into his car and came out with a

.22 caliber pistol, and everybody scattered except Neal and the defendant. The defendant pulled a .25 caliber automatic from his belt, but he had no bullets and did not shoot the victim. The defendant was shot in the leg. He left the scene and threw his gun in a field.

After the verdict the defendant moved for a new trial on the grounds that the verdict was against the credible evidence, contrary to law, and against the weight of the credible evidence, and for any just cause. Later successor counsel filed a second motion for a new trial on the grounds of prosecutorial misconduct and denial of effective assistance of counsel. The trial judge had died, and the motions were heard and denied by a second judge.

1. *Self-defense.* The trial judge did not charge the jury with respect to self-defense. Instead, he said that "there is no question raised here that there was a homicide committed," and that the jury must first determine whether the defendant committed the homicide. In this respect the charge accurately reflected the closing argument on behalf of the defendant, and no exception was taken. The defendant now argues, however, that evidence that the victim reached into his car and came out with a gun in his hand was sufficient to raise the issue of self-defense, that the charge improperly removed from the jury's consideration the issue of the lawfulness of the killing, and that we should exercise our discretion to consider this error despite the absence of an exception. See *Commonwealth* v. *Fields,* 371 Mass. 274, 277 (1976). The argument lacks substance except as it relates to a possible issue of self-defense.

The defendant's own testimony provided no basis for a charge on self-defense. Cf. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975). Nevertheless, if there was evidence in the case warranting a reasonable doubt on the issue, a charge on self-defense would not have been irregular. See *Commonwealth* v. *Bowman,* 373 Mass. 760, 767-768 (1977); *Commonwealth* v. *Barton,* 367 Mass. 515, 517-518 (1975). But the defendant might well have thought that such a charge, which would have assumed the falsity of his

testimony, might have an adverse effect. In these circumstances we do not think the judge was required, on his own motion, to charge the jury on the basis of a strained view of the evidence. Nor do we think we should relieve the defendant of the result of his own trial tactics.

Moreover, there was insufficient evidence to require an instruction on self-defense even on a request by the defendant. "Before a defendant is entitled to an instruction on self-defence, there must be evidence that he first took advantage of every opportunity to avoid the combat." *Commonwealth v. Lacasse,* 365 Mass. 271, 273 (1974). The defendant has cited us to no such evidence. His own testimony included a statement that he "couldn't run," but in a context which negated self-defense. He was not entitled to an instruction unsupported by evidence.

2. *Nondisclosure by the prosecutor.* Edward Short was the only witness who testified to the defendant's presence at the site in the morning, or to the defendant's statements about "stuff." On direct examination by the prosecutor, he testified only to the events immediately before, during and after the shooting. On cross-examination by defense cousel, it became apparent that Short had been at the site in the morning, and defense counsel left Short's testimony quite confused as to what happened when. The prosecutor, on redirect examination, straightened out the sequence of events. The resulting testimony was damaging to the defendant, and the prosecutor took full advantage of it in his summation to the jury.

The investigating officer testified at the hearing on the motions for a new trial, and the motion judge made findings, which we summarize. The officer interviewed Short within a few days after the killing, but Short was intoxicated and the interview was of little or no value. The officer again talked to Short on February 7, 1974, some four months after the killing, and made a written report to the prosecutor. Short was then under the influence of liquor, and his statements merely tended to corroborate those of the witness Neal. Shortly before trial the officer located Short in

a sober condition and learned that he had not been drinking for some time, and it was only then that the prosecutor decided to call him as a witness. The prosecutor's opening to the jury disclosed his intention to call Short as a witness. There was no prior knowledge on the part of the Commonwealth or the police of what Short saw and heard on the morning of the killing, and there was no withholding by the Commonwealth of any meaningful information in its possession.

The defendant now contends that the prosecutor improperly failed to disclose information concerning Short. As a result, he says, the jury never learned that Short was an alcoholic, that he may have been drunk on the day of the killing, that he may not have been at the scene at all, that he had not mentioned the morning argument during prior interviews, that he had in prior interviews left out critical details, that he had made prior inconsistent statements about the shooting, or that the Commonwealth was surprised by his testimony.

The information available to the prosecutor, according to the testimony of the investigating officer, was that Short was intoxicated when interviewed within a few days after the killing and was under the influence of liquor when interviewed some four months later. In the first interview, he was not sure he had been at the site on the day in question, but he said that he knew the victim, contrary to his trial testimony. In the second interview he said, as he testified at the trial, that he did not see a gun in the victim's hand; but he said, contrary to his trial testimony, that the victim reached into his car before he was shot.

There is no basis for the defendant's claim that Short's testimony was perjured and that the prosecutor knew or should have known of the perjury. See *United States* v. *Agurs*, 427 U.S. 97, 103-104 (1976). None of the information in question was requested by the defendant. None of it, either in the judgment of the motion judge or in our judgment, created a reasonable doubt as to the defendant's guilt that did not otherwise exist. See *id.* at 112. We have re-

viewed the entire record and are satisfied that its appraisal by the motion judge was thorough and entirely reasonable. There was therefore no error of constitutional dimension. *Id.* at 114.

The present case was tried in November, 1974, before our decision in *Commonwealth* v. *Lewinski,* 367 Mass. 889, 902 (1975), permitting a defendant to obtain prior written statements of prosecution witnesses without a showing of particularized need. That decision was prospective only. Even under that decision a motion is required. In the present case a pre-trial motion was filed for the disclosure of prior statements of Commonwealth witnesses, but the motion was not pressed.

3. *Ineffective assistance of counsel.* The defendant contends that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and that "it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We do not consider the alleged deficiencies in the behavior of counsel. Cf. *United States* v. *Agurs,* 427 U.S. 97, 102 n.5 (1976). Applying the second branch of the *Saferian* test, we find nothing to suggest that the defendant had any substantial ground of defense other than his claim that he did not shoot the victim. His trial counsel presented that defense to the jury fully and fairly, through cross-examination of witnesses for the prosecution, through examination of the defendant, and in argument. The behavior of counsel did not deprive the defendant of an otherwise available, substantial ground of defense.

4. *Section 33E.* We have examined the record, including the transcripts of testimony and the exhibits, and we find no reason to disturb the ultimate result. G. L. c. 278, § 33E.

*Judgment affirmed.*