## Commonwealth *vs.* Donald K. Rondeau.

Worcester. March 6, 1979. — July 5, 1979.

Present: Hennessey, C.J., Quirico, Kaplan, Wilkins, & Abrams, JJ.

*Practice, Criminal,* Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Attorney at Law. Conflict of Interest.*

A defendant was denied the effective assistance of counsel by reason of the failure of his attorney to withdraw when it became apparent that his testimony as an alibi witness for the defendant was necessary for the proper defense of his client. [413-417]

INDICTMENTS found and returned in the Superior Court on September 23, 1971.

The cases were tried before *Bennett,* J., and a motion for a new trial was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Steven J. Rappaport* for the defendant.

*Francis R. Fecteau,* Assistant District Attorney, for the Commonwealth.

---

QUIRICO, J. This appeal is before us pursuant to G. L. c. 278, §§ 33A-33G. The defendant was convicted on three indictments charging armed robbery and sentenced to serve eighteen to twenty-five years from and after any sentences presently being served. He moved for a new trial on the alternate grounds (a) that the trial judge erred in refusing to allow his trial attorney to withdraw so that he might become an alibi witness for the defense, or (b) that the defendant received ineffective assistance of counsel at his trial. The judge denied the motion after hearing, and the defendant appealed. The Appeals Court affirmed. *Commonwealth* v. *Rondeau*, 6 Mass. App. Ct. 932 (1978). We granted the defendant's application for further appellate review. See G. L. c. 211A, § 11(*b*). We reverse.

The South Works Credit Union in Worcester was held up on March 12, 1971, at about 10:40 A.M. by three men. One man, identified by several witnesses as the defendant, wore a hat, sunglasses, and a false beard that largely obscured his face. This man entered the Credit Union holding a nickel-plated revolver, and he ordered all persons present to stand up and put their hands behind their backs. Two other men, who wore masks, then entered, leaped over the tellers' counter, and placed about $4,500 in a pillowcase. The gunman told the occupants not to move for a few minutes, and all three individuals then left the premises.

The defendant sought to establish an alibi. One Ronald Grogan was on trial in the Worcester County courthouse on March 12, 1971. He testified that the defendant came to the courthouse that day to offer moral support and that he saw the defendant at various times between 9:30 A.M. and noon. In particular, according to Grogan, the defendant was seated as a spectator in Grogan's courtroom at 10:00 A.M. and at 11:00 A.M. One Joseph Courtney, who was not a defendant in this case but who was serving a sentence for other unrelated crimes, testified that he was the unmasked, bewhiskered gunman in the Credit Union

and that the defendant was not involved. Subsidiary details of Courtney's story differed, however, from those related by other witnesses.[1] Finally, Detective Oscar Provencher testified to seeing the defendant in the courthouse, but stated that the defendant left the courthouse at about 10:10 A.M.

After the trial the defendant obtained new counsel, who then filed a motion for a new trial. This motion was heard in March of 1976. The defendant and Donald P. Feldman, the trial attorney, testified at the hearing. Mr. Feldman stated that, during the first trial, he was ready to testify under oath to seeing the defendant in the courthouse on the morning in question at fifteen-to-twenty minute intervals. The judge, who was also the trial judge, denied the motion on the basic ground that he disbelieved Mr. Feldman's account.

The meritorious and dispositive issue before us on this further appeal is whether the defendant was deprived of the effective assistance of counsel by the failure of Mr. Feldman to withdraw from representation and to testify as an alibi witness.[2] No simple constitutional test suffices for resolution of this question. In the absence of firm guidance by the Supreme Court, the Courts of Appeals have fashioned divergent standards against which to

---

[1] Two tellers, the manager, and a customer of the Credit Union testified for the Commonwealth. Three stated that the gunman wore amber sunglasses, whereas Courtney said he was wearing blue sunglasses. One teller said the pillowcase was blue, whereas Courtney said it was white. Courtney contradicted testimony that the gunman wore a blue jacket and backed out of the building. Finally, Courtney testified to seeing a puddle on the floor beneath one of the tellers that no other witness described. The defendant did not recall these witnesses for corroboration or identification.

[2] The trial judge found as a fact that Mr. Feldman had not attempted to withdraw, and the record contains no evidence to the contrary. To the extent that the motion for a new trial was based on the contention that the judge erred in refusing to allow Mr. Feldman to withdraw, therefore, the Appeals Court correctly affirmed the denial thereof. See Commonwealth v. Brown, ante 165, 171 (1979), and cases cited.

measure the effectiveness of criminal trial attorneys.[3] See *Maryland* v. *Marzullo*, 435 U.S. 1011, 1011-1013 (1978) (White, J., dissenting from denial of certiorari). We attempted to bring some order into this doctrinal chaos in *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), where we said: "[W]hatever the attempted formulation of a standard in general terms, what is required in the actual process of decision of claims of ineffective assistance of counsel . . . is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel – behavior of counsel falling meas-

---

[3] The Second and Tenth Circuit Courts continue to insist that "to be of constitutional dimensions the representation [must] be so woefully inadequate as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice." *LiPuma* v. *Commissioner, Dep't of Corrections*, 560 F.2d 84, 90 (2d Cir.) (quotations omitted), cert. denied, 434 U.S. 861 (1977). See *United States* v. *Riebold*, 557 F.2d 697, 703 (10th Cir.) ("representation is competent unless it 'was perfunctory, in bad faith, a sham, a pretense or without adequate opportunity for conference or preparation' "), cert. denied, ·434 U.S. 860 (1977).

The other Circuit Courts have adopted more lenient standards that, while appearing tautological, tend to equate with the tort concept of professional competence. See *United States* v. *Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978) ("reasonably competent assistance"); *Boyer* v. *Patton*, 579 F.2d 284, 286 (3d Cir. 1978) ("exercise of the customary skill and knowledge which normally prevails at the time and place"); *Marzullo* v. *Maryland*, 561 F.2d 540, 543 (4th Cir. 1977) ("representation 'within the range of competence demanded of attorneys in criminal cases' "), cert. denied, 435 U.S. 1011 (1978); *Carbo* v. *United States*, 581 F.2d 91, 92 (5th Cir. 1978) ("reasonably likely to render and did render reasonably effective assistance"); *Beasley* v. *United States*, 491 F.2d 687, 696 (6th Cir. 1974) (same); *United States ex rel. Williams* v. *Twomey*, 510 F.2d 634, 641 (7th Cir.) ("legal assistance which meets a minimum standard of professional representation"), cert. denied sub nom. *Sielaff* v. *Williams*, 423 U.S. 876 (1975); *Beran* v. *United States*, 580 F.2d 324, 326 (8th Cir. 1978) ("customary skills and diligence that a reasonably competent attorney would [exercise] under similar circumstances"), cert. denied, 440 U.S. 946 (1979); *Cooper* v. *Fitzharris*, 586 F.2d 1325, 1328 (9th Cir. 1978) ("reasonably competent and effective representation"); *United States* v. *DeCoster*, 487 F.2d 1197, 1202 (D.C. Cir. 1973) ("reasonably competent assistance of an attorney acting as his diligent conscientious advocate").

urably below that which might be expected from an ordinary fallible lawyer—and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* at 96. Accord, e.g., *Commonwealth* v. *Mains*, 374 Mass. 733, 738 (1978).

*Saferian* envisages a two-step inquiry in the usual case where ineffective assistance of counsel is claimed. There must first be an evaluation of the attorney's conduct. There is language in two of our post-*Saferian* decisions that suggests continued adherence to the "farce and mockery" test approved in *Commonwealth* v. *Bernier*, 359 Mass. 13, 18 (1971). See *Delle Chiaie* v. *Commonwealth*, 367 Mass. 527, 536 (1975); *Commonwealth* v. *Rittenberg*, 366 Mass. 446, 449 (1974). We have, however, explicitly recognized at least once that *Saferian* enunciated a more lenient standard of competence, in accord with the clear Federal trend. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). After *Saferian*, a defendant need show only that the conduct of his lawyer was "measurably below that which might be expected from an ordinary fallible lawyer." This showing, it should be noted, is similar to that needed to prove a case of legal malpractice. See Restatement (Second) of Torts § 299A (1965); *Moore* v. *United States*, 432 F.2d 730, 736 n.24, 737 n.27 (3d Cir. 1970).

In addition to a showing of incompetence of counsel, our cases usually require a demonstration of prejudice resulting therefrom. *Commonwealth* v. *Bolduc*, 375 Mass. 530, 540 (1978). *Commonwealth* v. *Mains, supra. Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). *Connolly* v. *Commonwealth*, 366 Mass. 435, 438 (1974). *Commonwealth* v. *Saferian, supra.* See also *Beasley* v. *United States*, 491 F.2d 687, 696 (6th Cir. 1974) (defendant must lose substantial defense); *Beran* v. *United States*, 580 F.2d 324, 326 (8th Cir. 1978) (prejudice must be shown), cert. denied, 440 U.S. 946 (1979). But see *Moore* v. *United States, supra* at 737 (prejudice merely evidence of ineffec-

tiveness); *United States* v. *DeCoster*, 487 F.2d 1197, 1204 (D.C. Cir. 1973) (government must show lack of prejudice). When the arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not "second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty." *Commonwealth* v. *Stone*, 366 Mass. 506, 517 (1974). Instead, we require that such judgments be "manifestly unreasonable" (*Commonwealth* v. *Adams*, *supra*), and this typically means loss of "an otherwise available, substantial ground of defence."

Within the analytical framework we have summarized, the motion for a new trial presented a close question to the trial judge. On the one hand, Mr. Feldman cogently presented an alibi defense and attempted to impeach the identification testimony of prosecution witnesses. Ineffectiveness is not established simply by showing that Mr. Feldman failed to call an additional witness (himself) to bolster the defense case. *Commonwealth* v. *Little*, 376 Mass. 233, 241-242 (1978). *Thomas* v. *Estelle*, 588 F.2d 170, 171 (5th Cir. 1979). On the other hand, Mr. Feldman was the only alibi witness shown by the record to have been available who, we assume, could not be impeached by evidence of a criminal record; Grogan and Courtney were both so impeached. In addition, the extensive use of photographs and station house confrontations made before the trial of this case substantially weakened the identification testimony of eyewitnesses. The confluence of these factors should have alerted Mr. Feldman that his own testimony would be crucial. See *Wilson* v. *Cowan*, 578 F.2d 166, 168 (6th Cir. 1978). The judge found as a fact, however, that Mr. Feldman's proposed testimony was not credible. Such finding is not ordinarily to be overturned on appeal. *Commonwealth* v. *Brown*, *ante* 165, 171 (1979), and cases cited. On the basis of the facts found by the judge, therefore, there was no error in denying the motion for a new trial to the extent it was based on the mere failure of Mr. Feldman to testify.

Notwithstanding our conclusion that, in view of the judge's findings, there was no error, we inquire further whether there was a "a substantial risk of a miscarriage of justice" (*Commonwealth* v. *Freeman,* 352 Mass. 556, 564 [1967]) in light of Mr. Feldman's failure to withdraw before the commencement of the trial. Once it became apparent to Mr. Feldman that his testimony might be necessary to the proper defense of his client, he was ethically obligated to withdraw as counsel unless one of the few exemptions from this obligation existed. S.J.C. Rule 3:22, DR 5-102(A), DR 5-101(B), 359 Mass. 814 (1972). Rule 12 of the Superior Court (1974).[4] His failure to withdraw

---

[4] The rules cited in the text provide as follows:

"DR 5-102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."

DR 5-101(B) in turn provides:

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

Rule 12 of the Superior Court (1974) provides:

"No attorney shall be permitted to take part in the conduct of a trial in which he has been or intends to be a witness for his client, except by special leave of the court."

Objective rules of attorney conduct, like those cited, may provide appropriate evidence of what constitutes normally competent representation. See *Pires* v. *Commonwealth,* 373 Mass. 829, 835 (1977); *Proffitt* v. *United States,* 582 F.2d 854, 857 (4th Cir. 1978).

created a conflict of sorts between his own interests and those of his client. We have consistently held that a demonstrated conflict of interest arising from simultaneous representation of multiple clients is, without more, enough to render the assistance of counsel constitutionally ineffective. See *Commonwealth* v. *Davis*, 376 Mass. 647, 651 (1978); *Commonwealth* v. *Leslie*, 376 Mass. 777, 781 (1978); *Commonwealth* v. *Bolduc, supra* at 540-541. Cf. *Commonwealth* v. *Tabor*, 376 Mass. 811, 819 (1978) (statutory violation by prosecutor required new trial regardless of prejudice). See also *Holloway* v. *Arkansas*, 435 U.S. 475, 490-491 (1978). If the conflict created by Mr. Feldman's ethical misjudgment is akin to those previously considered by this court, therefore, the defendant need not show articulable prejudice in order to prevail.[5]

We think that the ethical infraction committed by Mr. Feldman was sufficiently below the required standard of professional conduct as to justify a new trial. See *United States* v. *McKoy*, 448 F. Supp. 826, 832 (E.D. Pa. 1978) (mistrial declared because attorney should have testified); *Gutierrez* v. *Travelers Ins. Co.*, 358 So. 2d 349, 351 (La. App. 1978) (compensation award vacated because attorney was key material witness). The decision to remain as counsel created an insoluble dilemma. Although no rule of evidence would have prevented Mr. Feldman from testifying (*Kendall* v. *Atkins*, 374 Mass. 320, 323 [1978]), appearing as a witness would have placed him "in the unseemly and ineffective position of arguing his own credibility." ABA Code of Professional Responsibility and

---

[5] *Commonwealth* v. *Wright*, 376 Mass. 725, 733-734 (1978), presented the similar question whether an attorney possessing impeachment evidence should withdraw in order to testify. No resolution of that issue was required, however, because the record failed to substantiate the existence of such evidence. Whether or not Mr. Feldman would be believed, the record shows him to be a material witness. In addition, his evidence was clearly admissible. Cf. *People* v. *McVet*, 7 Ill. App. 3d 381, 385-386 (1972) (assistance effective where attorney was witness to hearsay declaration against penal interest).

Canons of Judicial Ethics, Ethical Consideration (EC) 5-9.[6] Strong personal pressures would inevitably counsel against this course. But failure to testify might foreseeably deprive the defendant of relevant alibi evidence that the jury could weigh together with other evidence. In short, testifying would likely embarrass the advocate, whereas not testifying would embarrass the client.

The conflict of interest present in this case was, to be sure, exceedingly subtle. That very subtlety emphasizes the difficulty faced by a convicted defendant in showing actual prejudice. See *Osborne* v. *Commonwealth, ante* 104, 114 (1979); *Holloway* v. *Arkansas, supra* at 489-491. The ethical stricture violated here is so clear that we need not be troubled over a flood of cases commanding the weighing of imponderables. See Gard, Ineffective Assistance of Counsel — Standards and Remedies, 41 Mo. L. Rev. 483, 501 (1976). As we said in another context, "[t]he defendant was entitled to the undivided loyalty of counsel . . . ." *Commonwealth* v. *Geraway*, 364 Mass. 168, 174 (1973). He was denied this fundamental entitlement.[7]

We hold that the defendant was denied the effective assistance of counsel by reason of the failure of the attor-

---

[6] The record abounds with situations where Mr. Feldman argued with witnesses and to the jury concerning the content or meaning of conversations to which Mr. Feldman was a party. These situations exemplify the danger sought to be avoided by (EC) 5-9. We do not, however, rest our decision on the largely conjectural impact of these incidents on the jury. Rather, we are concerned with the dilemma created by Mr. Feldman's failure to withdraw as counsel for the defendant.

[7] One commentator has argued that the concern of the ethical rule under consideration "is not protection of the client's interests but the integrity of the attorney's professional role and the preservation of its uniqueness." Enker, The Rationale of the Rule that Forbids a Lawyer To Be Advocate and Witness in the Same Case, 1977 Am. B.F. Res. J. 455, 464. This view implies that the remedy of new trial is not required when an attorney continues to represent a criminal defendant. We disagree. The conflict engendered in the attorney's own mind may have unmeasurable adverse effects on the client's interests. It is the conflict alone which renders assistance ineffective.

ney to withdraw when the need for his testimony became apparent. We believe that trial judges should take early and effective action to prevent similar problems from arising. "We deem [DR 5-101(B), 5-102(A)] to require that the court first consider whether the attorney's testimony will be necessary to protect his client's interests and, if it concludes such testimony will likely be necessary, that it order a timely withdrawal consistent with minimizing prejudices which may result from the substitution of counsel." *Comden* v. *Superior Court*, 20 Cal. 3d 906, 913 (1978). We have no doubt that judicial intervention combined with the threat of imminent disciplinary action against attorneys will be ample preventive medicine.

For the reasons stated, the judgments of the Superior Court on the three indictments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*