NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12229

COMMONWEALTH  vs.  NATHANIEL BROWN.


Norfolk.     March 4, 2024. – July 11, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Dewar, JJ.


Homicide.  Practice, Criminal, New trial, Assistance of counsel,
     Motion to suppress, Waiver, Capital case.  Constitutional
     Law, Assistance of counsel.  Attorney at Law, Conflict of
     interest.  Conflict of Interest.  Waiver.



     Indictment found and returned in the Superior Court
Department on September 25, 2013.

     A motion for a new trial, filed on September 24, 2019, was
heard by William F. Sullivan, J.


     Tracey A. Cusick, Assistant District Attorney (Carolyn L.
Hely, Assistant District Attorney, also present) for the
Commonwealth.
     John H. Cunha, Jr. (Charles Allan Hope also present) for
the defendant.


     DEWAR, J.  In 2016, a jury convicted the defendant,

Nathaniel Brown, of murder in the first degree on the theory of

extreme atrocity or cruelty in connection with the stabbing

death of Jordan Baskin.  Following his conviction, represented by new counsel, the defendant filed a motion for a new trial, claiming two violations of his right to counsel under art. 12 of the Massachusetts Declaration of Rights.  First, the defendant argued that his trial counsel failed to provide minimally effective representation before and during a police interview in which police acquired incriminating evidence later introduced at his trial.  Second, the defendant claimed that his trial counsel suffered from a conflict of interest in her continued representation of him following the police interview, because filing a motion to suppress the resulting incriminating evidence on the ground of ineffective assistance of counsel would have been contrary to his trial counsel's own interests.  The defendant's direct appeal was stayed pending the outcome of the motion for a new trial.  In 2023, following an evidentiary hearing, a Superior Court judge (motion judge) allowed the motion for a new trial, finding a new trial warranted under art. 12 on both of the grounds raised by the defendant.  The case is now before this court on the Commonwealth's appeal.

Finding no error of law or abuse of discretion in the motion judge's conclusion that trial counsel labored under an actual conflict of interest in representing the defendant, we affirm the allowance of a new trial on this ground and do not reach the defendant's other claimed art. 12 violation.

1.  Background.  a.  Facts.  We first briefly summarize the nature of the criminal case against the defendant and then recite the facts relevant to his motion for a new trial as found by the motion judge in his written decision, supplemented with undisputed facts in the record.  See Commonwealth v. Velez, 487 Mass. 533, 535 (2021).

On the evening of April 14, 2013, police responded to a report of a stabbing at a home in Milton.  Upon arrival, they found the victim lying on the enclosed porch of the home he shared with his parents, bleeding from multiple stab wounds.  Medical personnel transported him to the hospital, where he died shortly thereafter from his injuries.  The victim had struggled with addiction and, on the day of his death, had sought emergency medical attention for withdrawal symptoms and also reportedly sought to purchase drugs with a group of friends.  At the crime scene, police discovered the victim's cell phone and a palm print, which matched that of the defendant, on the shattered porch door.  On neighboring properties, police found a bag of marijuana and heroin that had a fingerprint on it that matched that of the defendant, another cell phone that was associated with a telephone number used by the defendant, and one of the victim's shoes.

When police contacted the registered owner of a 2002 Oldsmobile Bravada (SUV) matching the description of a vehicle

seen on camera leaving Milton and entering Boston around the time of the stabbing, they obtained information linking the SUV to the defendant. Police learned that the mother of the defendant's child had possession of the SUV, and that an associate of the defendant reported that he often drove the defendant in the SUV around Boston and Milton to sell drugs. Police visited various locations seeking to speak with the defendant.

Shortly thereafter, the defendant was put in contact with the attorney who would go on to serve as the defendant's trial counsel (trial counsel). Trial counsel began practicing as an attorney in 1996 and had previously served as an assistant district attorney prosecuting criminal cases before turning to criminal defense.

The defendant retained trial counsel to represent him with regard to what trial counsel understood to be an investigation by the Milton police department; the defendant disclosed to trial counsel that he had learned that the Milton police wanted to speak with him and were interested in the SUV. The defendant and trial counsel had an initial discussion focused on the SUV, which the police were at that point seeking but had not yet

found.[1]  The defendant told trial counsel that he had purchased the SUV within the past month for the mother of his child to use to transport the child to and from school and showed counsel a receipt for the purchase.  Trial counsel advised the defendant that any evidence of a crime in the SUV would create a problem for him.  The defendant repeatedly assured trial counsel that nothing in the SUV could implicate him in any crime and stated that he never drove the SUV.  Trial counsel believed the defendant's assurances and believed it would benefit him to turn over the vehicle voluntarily.

After having this conversation with the defendant, trial counsel called the Milton police to inform them that the defendant was going to surrender the SUV they were seeking.  Counsel did not inquire about the reason the police were interested in the SUV nor the nature of their investigation.

Around the time the police obtained the SUV, police investigators became interested in speaking with the defendant about the homicide.  At that point, trial counsel still did not

---

[1] Although not addressed expressly by the motion judge, there was conflicting testimony at the hearing on the motion for a new trial regarding when and how the police obtained the SUV, and, in particular, whether trial counsel was responsible for turning over the SUV to the police following this conversation with the defendant or whether the police independently obtained the SUV.  This dispute is not material to our decision, and we recite the facts as found by the motion judge, which are consistent with trial counsel's account.

know that the investigation related to a murder and believed that the police intended to ask the defendant questions about the SUV. Although she believed that the vehicle may have been involved in a drug-related crime, she did not know for certain, and she knew the defendant was anxious to retrieve the SUV from the police as soon as possible. Trial counsel had a conversation with the defendant about the possibility of speaking with the police. She asked him if there was any reason why the police would want to speak with him and specifically asked if he had "any issues" in Milton or in Quincy. The defendant responded that he was not aware of any reason the police would want to speak with him, nor of any issue in Milton or Quincy in particular, and told trial counsel that he had no concerns about speaking with the police. Although she maintained lingering suspicions about the SUV's potential involvement in drug activities, trial counsel felt that the defendant was being honest with her, and she did not believe a police interview would put him "in jeopardy." To the contrary, believing the defendant's statements that "there was nothing to hide," trial counsel thought speaking with the police "would be to [the defendant's] benefit, because it would be exculpatory in nature if he went and cooperated."

In the course of this conversation about the possible police interview, trial counsel told the defendant what she

believed to be the "normal advice that you'd give a client," including that he should be truthful with her about whether he had anything to hide, because he did not know what the police would ask him. Although trial counsel did not recite the Miranda warnings, she spoke with the defendant about the dangers and ramifications of speaking with the police. She advised him that he should not speak with the police if he did have anything to hide and further advised him that anything he said to the police could be used against him.

The defendant decided to speak with the police. Trial counsel called the Milton police and spoke with a detective to arrange for an interview at the Milton police station for the morning of Sunday, April 21, 2013. As with her prior call to the Milton police regarding the SUV, trial counsel again did not inquire about the nature of the investigation, nor whether her client was a suspect, person of interest, or target of the investigation. It appears from the record that the conversation with the detective involved solely setting up the logistics of the interview. Prior to the interview she arranged, trial counsel knew only that the investigation "had to do with something in Milton" and remained unaware that the police investigation related to a homicide.

Present at the Milton police station that Sunday morning for the interview were two State police homicide investigators

assigned to the office of the district attorney for the Norfolk district, as well as one detective from the Milton police department. At the outset of the interview, they explained to trial counsel and the defendant that the investigation concerned the April 14, 2013, murder of the victim in Milton. After thus learning that police sought to question the defendant in connection with a homicide investigation, trial counsel did not terminate the interview nor request to speak privately with the defendant before proceeding, forgoing the opportunity to inquire of her client specifically about a homicide or to advise him regarding the potential perils of speaking with the officers. In keeping with what she testified at the motion hearing was her usual practice for police interviews, trial counsel did not consent to the interview being recorded. The officers provided a Miranda form to the defendant, who signed it with his right hand. Trial counsel signed the Miranda form as a witness.

Over the course of the interview, the defendant denied knowing the victim after being shown a picture of him, denied ever going to the victim's house, denied ever owning a cell phone, and denied any association with three specific cell phone numbers. At this point, trial counsel became concerned that the defendant was making a misrepresentation regarding the cell phone numbers. She was aware that the defendant had a cell phone and recognized one of the cell phone numbers the police

listed.  She then stopped the interview to speak with the defendant in the hallway.

The motion judge made no findings as to the content of trial counsel's hallway conversation with the defendant.  Trial counsel's fragmented testimony relating to the content of the conversation included that she confronted the defendant about his misrepresentations regarding the cell phones; repeated what she had told him prior to the interview, that he should not speak further to the police if he had anything to hide; and informed him of her view that the police likely already knew the telephone numbers were his.  Trial counsel and the defendant then reentered the room and resumed the interview.

The officers questioned the defendant further.  Among other responses, and as would become relevant to cell phone evidence in the case, the defendant admitted that "Nasty" was a nickname that he had had since childhood.

As the questioning continued, one of the officers noted a bandage on the defendant's right index finger.  The defendant complied with an officer's request to remove the bandage, revealing a cut.  The police then asked to photograph the cut, at which point trial counsel denied the request and terminated the interview.

Trial counsel and the defendant left the police station. Later that day, the defendant through trial counsel informed the

officers that one of the cell phone numbers about which they had inquired had been his for the past thirteen years.

A grand jury indicted the defendant for murder in September 2013.

b. Proceedings. Trial counsel's presence at the defendant's police interview gave rise to concerns, raised repeatedly by the prosecutor and judges during the pretrial proceedings, that trial counsel had a potential conflict of interest because she might need to testify at trial if a dispute arose regarding what had occurred at the police interview. See Commonwealth v. Patterson, 432 Mass. 767, 777 (2000), S.C., 445 Mass. 626 (2005), overruled on other grounds by Commonwealth v. Britt, 465 Mass. 87 (2013) (trial counsel had actual conflict of interest once it became apparent trial counsel ought to be called to testify at trial to dispute key detail in police account of defendant's counseled police interview). Notwithstanding trial counsel's repeated representations that the defendant would not be disputing at trial what occurred at the police interview, the prosecutor placed trial counsel on the witness list and later moved to disqualify her. Trial counsel was ultimately permitted to continue representing the defendant after repeated colloquies to confirm that the defendant understood the nature and implications of this potential conflict, knew he was entitled to the appointment of counsel

without such a potential conflict, and nevertheless wished to continue with her as his counsel.

At a final pretrial conference, the judge asked the parties to review Commonwealth v. Celester, 473 Mass. 553 (2016), and inform him if the case affected their view of his decision to permit trial counsel's continued representation of the defendant. Released that morning, Celester, supra at 567-568, held, as a matter of first impression, that if a person is accompanied by counsel at a prearraignment custodial interrogation, the person has a right under art. 12 to the effective assistance of that counsel. The judge briefly commented that he understood the circumstances in Celester differed in at least one respect from the defendant's case and deferred further discussion until the parties had a chance to review the decision. The judge was unexpectedly unable to preside at the defendant's trial the following month, and Celester was never addressed on the record again.[2]

---

[2] Thus, no motion was ever filed pursuant to Celester, nor any motion to suppress all of the evidence from the police interview. However, at the prompting of the newly assigned trial judge, trial counsel did file a motion to exclude several questions asked by the investigators during the police interview and the defendant's corresponding responses, on the ground that the defendant's unequivocal denials of police accusations were inadmissible for certain purposes. See Commonwealth v. Spencer, 465 Mass. 32, 50 (2013). Ultimately, the judge and parties agreed that the defendant's denial of knowing the victim was admissible, and the prosecutor agreed not to elicit testimony

A full accounting of the evidence at the defendant's March 2016 trial is not necessary to the issue we decide today concerning the claimed conflict of interest on the part of trial counsel. Most relevant here is simply the fact that the Commonwealth, in seeking to prove its theory that the defendant had killed the victim after a drug transaction "went wrong," introduced evidence obtained during the police interview. The Commonwealth introduced, and argued as consciousness of guilt, testimony that the defendant at his police interview had falsely denied knowing the victim, ever going to the victim's house, owning a cell phone, and using any of the three cell phone numbers identified at the interview. The Commonwealth also introduced testimony that, at the time of the interview, the defendant had a cut on his right index finger and demonstrated his right-handedness when signing the Miranda form. And the Commonwealth introduced testimony that the defendant acknowledged at the interview that his nickname was "Nasty"; the victim had cell phone contacts named "Nasty" and "Nasty New" and had sent text messages to "Nasty New" and called that contact in the hours and minutes leading up to his death.

The jury convicted the defendant of murder in the first degree on the theory of extreme atrocity or cruelty. The

---

that the defendant denied knowing people associated with the victim.

defendant noticed an appeal, which was docketed in this court in November 2016. In September 2019, the defendant, represented by new counsel (defense counsel), filed a motion for a new trial, claiming ineffective assistance of counsel. This court remanded the motion for a new trial to the Superior Court.

Since the trial judge had retired, a different judge held an evidentiary hearing over the course of three days in 2021 and 2022. Defense counsel called three witnesses to testify at the hearing: trial counsel, a lead investigator on the case who was present at the defendant's police interview, and attorney Charles Rankin as an expert witness.

In June 2023, the motion judge allowed the motion for a new trial on both of the grounds urged by the defendant. First addressing the defendant's claim of ineffective assistance of counsel under Commonwealth v. Saferian, 366 Mass. 89 (1974), the motion judge found that the defendant had received ineffective assistance of counsel at the police interview based on trial counsel's failure to terminate the interview or "at least" speak further with the defendant once the police stated that they were investigating a homicide, as well as her subsequent failure to terminate the interview immediately upon "realiz[ing] that [the defendant] was lying to police about his phone number." The motion judge held that a new trial was required because trial counsel's deficient performance had caused the defendant to make

a statement to the police, resulting in consciousness-of-guilt and other inculpatory evidence used by the Commonwealth at trial that likely influenced the jury's verdict. Turning to the defendant's second claim of ineffective assistance of counsel, the judge found that trial counsel labored under an actual conflict of interest with respect to a potential motion to suppress the evidence from the police interview, based on her own ineffective assistance of counsel at the interview. The motion judge held that a new trial was therefore required on this additional basis, without a further showing of prejudice, because the defendant had not made a voluntary, knowing, and intelligent choice to waive the actual conflict of interest. The Commonwealth appealed.

2. Discussion. The defendant's direct appeal from his conviction of murder in the first degree pursuant to G. L. c. 278, § 33E, is not currently before this court. Before us now is solely the Commonwealth's appeal from the motion judge's allowance of the defendant's motion for a new trial. We therefore review the motion judge's decision under our usual standard of review following the grant of a new trial. See Commonwealth v. Yat Fung Ng, 489 Mass. 242, 247-248 (2022).

We review the allowance of a new trial "to determine whether there has been a significant error of law or other abuse of discretion" and reverse the motion judge's decision only "if

it is manifestly unjust" (quotations and citation omitted). Yat Fung Ng, 489 Mass. at 248. We may affirm on "grounds different from those relied upon by the motion judge, so long as the correct or preferred basis for the affirmance is supported by the record and the findings" (quotation and citation omitted). Id. Where, as here, the motion judge did not preside at trial, we defer to the motion judge's assessment of the credibility of witnesses who testified at the hearing on the motion but regard ourselves in as good a position as the motion judge to assess the trial record. Id. at 248-249. We accept the motion judge's findings of fact if they are supported by the record, which we examine in its entirety. Id. at 248.

"The Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights entitle a defendant to the effective assistance of counsel." Commonwealth v. Perkins, 450 Mass. 834, 850 (2008), quoting Commonwealth v. Martinez, 425 Mass. 382, 387 (1997). While a defendant's right to counsel under the Sixth Amendment "attaches only at the initiation of adversary criminal proceedings," a defendant also has a right under the Fifth Amendment to "consult with an attorney and to have counsel present during questioning" in a custodial interrogation. Davis v. United States, 512 U.S. 452, 456-457 (1994), citing Miranda v. Arizona, 384 U.S. 436, 469-473 (1966). The United States Supreme Court has recognized these Miranda

rights as "indispensable to the protection of the Fifth Amendment privilege" against self-incrimination. Miranda, supra at 469. Interpreting the distinct right against self-incrimination in art. 12, this court has placed even "greater" emphasis on ensuring that the right to speak with an attorney during a custodial interrogation is "'actualize[d]' and 'substantively meaningful.'" Celester, 473 Mass. at 567, quoting Commonwealth v. Mavredakis, 430 Mass. 848, 860 (2000). The court in Celester, supra at 567-568, held that "the right to the assistance of counsel that art. 12 provides in connection with a prearraignment, custodial interrogation is a right to the effective assistance of counsel," because "a person's right to speak with counsel is not 'actualize[d]' or 'substantively meaningful' if counsel fails to provide at least minimally competent advice" (emphasis added).

A criminal defendant's right to the effective assistance of counsel under art. 12 is a right to "the untrammeled and unimpaired assistance of counsel free of any conflict of interest." Commonwealth v. Hodge, 386 Mass. 165, 167 (1982), quoting Commonwealth v. Michel, 381 Mass. 447, 453 (1980). See Strickland v. Washington, 466 U.S. 668, 688 (1984) (counsel's "basic duties" include "a duty to avoid conflicts of interest," because "[c]ounsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty"). "A defense

counsel makes countless choices, on and off the record, to protect a defendant's rights, and we rely on counsel's zealous advocacy, unimpeded by a conflict of interest, to ensure that no person is punished without fair proceedings; when a counsel's professional judgment is impaired by an actual conflict of interest, every action, and inaction, is called into question, and we cannot be confident that the outcome of the proceedings is fair and just."  Commonwealth v. Dew, 492 Mass. 254, 264 (2023).  Article 12 therefore entitles a defendant to "the undivided loyalty of his counsel to present the defense case with full force and zealousness."  Perkins, 450 Mass. at 850, quoting Commonwealth v. Downey, 65 Mass. App. Ct. 547, 552 (2006).

Thus recognizing that "the assistance of legal '[c]ounsel is vital to the adversary process,'" we have long held that, where a defendant has shown that counsel was laboring under an actual conflict of interest, art. 12 does not require "a showing that the conflict had an adverse impact on the defendant." Martinez, 425 Mass. at 387-388, quoting Commonwealth v. Connor, 381 Mass. 500, 503 (1980).  Rather, "the conflict alone . . . renders assistance ineffective," because "[t]he conflict engendered in the attorney's own mind may have unmeasurable adverse effects on the client's interests."  Commonwealth v. Rondeau, 378 Mass. 408, 416 n.7 (1979).  By contrast, under the

Sixth Amendment, a defendant must show that an actual conflict adversely affected counsel's representation. See Cuyler v. Sullivan, 446 U.S. 335, 349-350 (1980). Our "more protective course" under art. 12 "avoid[s] putting a defendant in the untenable position where he would otherwise 'be put to the burden, perhaps insuperable, of probing the resolve and the possible mental conflict of counsel,'" a burden difficult to prove, "particularly as to things that may have been left not said or not done by counsel." Martinez, supra at 388, quoting Hodge, 386 Mass. at 169-170. Thus, under art. 12, "[o]nce an actual conflict of interest has been established, the defendant's conviction must be reversed unless . . . the client has waived the conflict." Perkins, 450 Mass. at 853.

"An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of trial counsel is impaired, either by his [or her] own interests, or by the interests of another client." Perkins, 450 Mass. at 852, quoting Commonwealth v. Shraiar, 397 Mass. 16, 20 (1986). An actual conflict is "one in which prejudice is 'inherent in the situation,' such that no impartial observer could reasonably conclude that the attorney is able to serve the defendant with undivided loyalty" (citation omitted). Commonwealth v. Mosher, 455 Mass. 811, 819-820 (2010). A defendant bears the burden to "detail[] the precise character of the alleged conflict."

Patterson, 432 Mass. at 774, quoting Martinez, 425 Mass. at 389.
"In determining whether such a conflict exists we look to the
standards set forth in the applicable codes of professional
ethics." Commonwealth v. Cousin, 478 Mass. 608, 617 (2018),
S.C., 484 Mass. 1042 (2020), citing Mass. R. Prof. C. 1.7, as
appearing in 471 Mass. 1335 (2015).  "The critical inquiry is
whether the lawyer has a competing interest or responsibility
that 'will materially interfere with the lawyer's independent
professional judgment in considering alternatives or foreclose
courses of action that reasonably should be pursued on behalf of
the client.'"  Perkins, supra at 851-852, quoting comment 4 to
Mass. R. Prof. C. 1.7, 426 Mass. 1330 (1998).  Our analysis
hinges on the particular "attendant facts and circumstances
surrounding the claimed actual conflict."  Cousin, supra at 618.

Here, the defendant claimed, and the motion judge found,
that trial counsel was burdened by an actual conflict of
interest in representing the defendant because the
representation required deciding whether to move to suppress the
evidence derived from the defendant's counseled police interview
based on ineffective assistance of counsel by trial counsel
herself.  We discern no error in the motion judge's conclusion
that the circumstances here did present an actual conflict of
interest.

Under Mass. R. Prof. C. 1.7, as amended, 490 Mass. 1303 (2022), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Such a conflict exists where, among other circumstances, "there is a significant risk that the representation of one . . . client[] will be materially limited . . . by a personal interest of the lawyer." Id. While a lawyer's personal interests may take many forms, comment 10 to rule 1.7 expressly contemplates the species of conflict at issue in this case: "[f]or example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Id. at comment 10.[3]

We have previously recognized an analogous actual conflict arising from a criminal defense lawyer's personal interests where the lawyer was in a position to serve as an alibi witness for his client. In Rondeau, 378 Mass. at 410, a lawyer testified at a hearing on the defendant's motion for a new trial that the lawyer had sought, and was denied, permission to

---

[3] While rule 1.7 was amended during the period trial counsel represented the defendant, the changes are not material here. The version of Mass. R. Prof. C. 1.7 in effect in 2013 stated, in relevant part, that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests." Mass. R. Prof. C. 1.7 (b), as amended, 430 Mass. 1301 (1999). The sentence regarding "the probity of a lawyer's own conduct" contained in the current version of comment 10 was formerly in comment 6 of the version of rule 1.7 in effect in 2013.

withdraw from representing his client so that he could testify at trial that he had seen his client at regular intervals at a court house on the morning of the armed robbery at issue. The motion judge, who was also the trial judge, denied the motion for a new trial because the judge did not believe the lawyer's account. Id. Declining to disturb the motion judge's credibility assessment, this court upheld the denial of the defendant's motion for a new trial to the extent it was based on the lawyer's "mere failure . . . to testify." Id. at 413. We nevertheless ordered a new trial based on the "insoluble dilemma" created by the lawyer's "decision to remain as counsel," where "appearing as a witness would have placed him 'in the unseemly and ineffective position of arguing his own credibility.'" Id. at 415, quoting American Bar Association Code of Professional Responsibility and Canons of Judicial Ethics, Ethical Consideration 5-9. We found that "[s]trong personal pressures would inevitably counsel against" the attorney choosing to testify, while "failure to testify might foreseeably deprive the defendant of relevant alibi evidence that the jury could weigh together with other evidence." Rondeau, supra at 416. "In short," we concluded, "testifying would likely embarrass the advocate, whereas not testifying would embarrass the client." Id. Accord Commonwealth v. Delnegro, 91 Mass. App. Ct. 337, 345-347 (2017) (rule 1.7

required counsel's withdrawal due to actual conflict of interest where counsel had "significant involvement as a participant and witness in both incidents leading to the defendant's arrests," police testimony "portray[ed] her in a less than flattering light," and probity of her conduct was in question).[4]

Here, trial counsel faced a conflict in which prejudice was similarly "'inherent in the situation,' such that no impartial observer could reasonably conclude that the attorney [was] able to serve the defendant with undivided loyalty" in working to obtain an acquittal on his behalf (citation omitted).  Mosher, 455 Mass. at 819-820.  The circumstances here necessitated, at a minimum, a strategic decision by trial counsel regarding whether to pursue a motion to suppress on grounds of ineffective assistance of counsel.  Trial counsel did not immediately terminate the defendant's police interview once she first learned that it pertained to a homicide investigation, nor pause at that time to speak with her client about the risks of proceeding.  Instead, the interview went forward, and trial

---

[4] In addition to raising conflict concerns under rule 1.7, the prospect of a lawyer appearing as a witness at his or her client's trial also implicates Mass. R. Prof. C. 3.7, as amended, 490 Mass. 1309 (2022) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," subject to certain exceptions).  See, e.g., Delnegro, 91 Mass. App. Ct. at 343-345 (lawyer was necessary witness and therefore could not represent defendant at trial under rule 3.7).

counsel again did not terminate the interview, nor in their hallway conversation[5] convince the defendant to terminate the interview, when the defendant made statements -- that he did not own a cell phone nor use a telephone number that trial counsel recognized to be his -- that trial counsel immediately recognized as untruthful. Cf. Celester, 473 Mass. at 571-572, quoting American Bar Association Standards for Criminal Justice, Defense Function, Standard § 4-3.7(a) (4th ed. 2015) ("Defense counsel should inform the client of his or her rights in the criminal process at the earliest opportunity, and . . . take necessary actions to vindicate such rights"). The defendant's misstatements not only were potential evidence of consciousness of guilt but also independently risked criminal liability; willfully misleading a police officer "with the intent to or with reckless disregard for the fact that it may . . . impede,

_____

[5] Trial counsel's testimony at the motion hearing did not include a detailed account of the substance of this hallway conversation with her client, and accordingly the motion judge did not make factual findings regarding what was said. The record contains contradictory evidence regarding whether trial counsel paused the interview at that time: an officer testified at the motion hearing that he did not recall the defendant and trial counsel leaving the room at any time prior to the exchange regarding the cut on the defendant's finger; the police report recounting the interview does not mention this pause; and the defendant's affidavit submitted with his motion for a new trial denies that counsel paused the interview or spoke with him at this juncture. The motion judge nevertheless found that a pause occurred, a finding we do not disturb because it is supported by testimony from trial counsel that the motion judge evidently credited. See Yat Fung Ng, 489 Mass. at 248.

obstruct, delay, prevent or otherwise interfere with[] a criminal investigation" is a felony.  G. L. c. 268, § 13B (b). The circumstances of the interview thus raised, at the least, a serious question regarding trial counsel's performance sufficient to warrant considering pursuit of a motion to suppress on ineffective assistance of counsel grounds.[6]

Yet trial counsel also had an obvious "competing interest" of her own that "materially interfere[d] with [her] independent professional judgment in considering" whether to file a motion to suppress on the defendant's behalf:  such a motion would inherently call into question her own professional competence. Perkins, 450 Mass. at 851-852, quoting comment 4 to Mass. R. Prof. C. 1.7, 426 Mass. 1330 (1998).  In the circumstances of this case, "the probity" of trial counsel's "own conduct" would be put "in serious question" by the motion to suppress, where, amidst a homicide investigation, trial counsel failed to end the defendant's police interview even after the defendant made

---

[6] We express no view concerning whether such a motion to suppress would or should have been granted if it had been filed, nor concerning the Commonwealth's argument, in disputing the motion judge's grant of a new trial on the separate ground that the defendant received ineffective assistance of counsel under Saferian, 366 Mass. at 96, that declining to file such a motion to suppress was not a manifestly unreasonable strategic decision by trial counsel.  Our concern here is "the conflict alone." Rondeau, 378 Mass. at 416 n.7.  See Patterson, 432 Mass. at 780 n.18 ("The very problem with an attorney's conflict of interest is that the attorney's judgment about strategic choices is clouded by conflict").

statements to the police that counsel immediately recognized to be falsehoods, and the interview instead went on to yield additional inculpatory evidence. Comment 10 to Mass. R. Prof. C. 1.7 (a), as amended, 490 Mass. 1303 (2022). For this reason, the motion judge correctly found that trial counsel's own personal interests as a practicing attorney would materially interfere with her independent professional judgment in considering whether to file such a motion to suppress, and that, burdened by this actual conflict, she could not pursue any such motion with the "full force and zealousness" we require of criminal defense counsel (quotation omitted). Perkins, supra at 850. Such a motion would, moreover, place trial counsel in the inherently ineffectual position of arguing to the court that she herself performed deficiently. See Rondeau, 378 Mass. at 415. We therefore see no error in the motion judge's conclusion that "no impartial observer could reasonably conclude that" trial counsel would be "able to serve the defendant with undivided loyalty" in the circumstances of this case. Mosher, 455 Mass. at 819-820.

While our conclusion that trial counsel did labor under an actual conflict of interest is founded upon the particular factual circumstances here, this conclusion is consistent with the holdings of a number of other courts that "'forcing trial counsel to prove [counsel's] own ineffectiveness' create[s] a

conflict of interest." Lesko v. Secretary Pa. Dep't of Corrections, 34 F.4th. 211, 226 (3d Cir. 2022), quoting United States v. Del Muro, 87 F.3d 1078, 1080 (9th Cir. 1996) (per curiam) (surveying additional such decisions). In Lesko, supra, for example, the United States Court of Appeals for the Third Circuit concluded that the defendant's trial counsel had operated under a conflict of interest that effectively prevented him from raising in the defendant's earlier State and initial Federal habeas proceedings a potential claim that trial counsel had interfered with the defendant's right to testify. Raising such a claim "'would have required [counsel] to denigrate [his] own performance' -- something he 'cannot reasonably be expected to' do." Lesko, supra, quoting Christeson v. Roper, 574 U.S. 373, 378 (2015). In so holding, the court likewise relied in part on the principle that, "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Lesko, supra, quoting American Bar Association Model Rules of Professional Conduct 1.7 comment 10. See, e.g., Christeson, supra at 378-379 (petitioner entitled to new substitute counsel where counsel could not "reasonably be expected to" denigrate counsel's own performance in arguing for tolling of statute of limitations based on counsel's miscalculation of deadline); State v. Taylor, 1 S.W.3d 610, 612

(Mo. Ct. App. 1999) ("An accused is entitled to representation which is uncluttered by counsel's efforts to vindicate his own conduct" [citation omitted]).

Concluding for this same reason that trial counsel had an actual conflict of interest in representing the defendant in this prosecution, we need not reach the additional considerations mentioned by the motion judge and disputed by the Commonwealth, that trial counsel had an actual conflict because the filing of such a motion to suppress risked harming her professional reputation and future financial interests.  The question whether a hypothetical motion to suppress filed by trial counsel posed sufficient threat to her reputational or financial interests as to create an actual conflict of interest is academic, where it is otherwise so plain that trial counsel could not ethically represent the defendant in connection with such a motion.  In our view, the actual conflict burdening trial counsel in the circumstances of this case stemmed from the difficulty or impossibility of giving her client the benefit of a lawyer's detached and independent advice and the zealous defense to which he was entitled, where her client's defense required considering whether and how to attack the adequacy of her own professional performance at his police interview. Nothing further is required to establish the existence of an actual conflict of interest here.

We discern no error in the motion judge's further conclusion that the defendant did not validly waive this actual conflict of interest. Even "where an actual conflict of interest is established, the defendant 'may consent to continued representation by his attorney so long as his consent is voluntarily, knowingly, and intelligently made'" (quotation omitted). Perkins, 450 Mass. at 853, quoting Martinez, 425 Mass. at 392. "Because [c]ounsel's undivided loyalty to the client is crucial to the integrity of the entire adversary system, . . . this waiver by the defendant must be clear and unambiguous" (quotation omitted). Id. While the parties did extensively discuss before trial a potential conflict of interest arising from trial counsel's presence at the defendant's police interview, that conflict was distinct: a risk that, depending on the evidence admitted at trial, trial counsel ought to be called as a witness to dispute another witness's account of the interview. See Patterson, 432 Mass. at 777-779. Although trial counsel took the position that this eventuality was unlikely, the defendant underwent repeated colloquies confirming his wish to be represented by trial counsel notwithstanding her status as a potential trial witness.[7]

---

[7] In addressing this potential conflict, the judges involved in this case appropriately acknowledged the defendant's right to choose his own counsel under art. 12 and the Sixth Amendment.

While these colloquies thoroughly plumbed the defendant's understanding of the Patterson issue, none addressed or even mentioned a conflict of interest pertaining to the adequacy of counsel's performance at the police interview.

Nor can we find a waiver of the actual conflict here based on the fact that one judge, shortly before trial, did briefly question whether our decision in Celester, 473 Mass. at 567-568, had a bearing on his earlier decision that trial counsel could continue to represent the defendant. In an exchange with the prosecutor and trial counsel on the morning Celester was decided, the judge mentioned the decision; noted that, unlike in this defendant's case, in Celester a murder warrant had been issued for the defendant at the time of the police interview; and suggested that further discussion of Celester could occur at a later date once the prosecutor and trial counsel had a chance to review the decision. However, no subsequent conversation related to Celester ever occurred on the record, nor did any colloquy with the defendant concerning an actual conflict arising from trial counsel's performance at the police interview. The record thus does not reflect that the defendant provided a voluntary, knowing, and intelligent waiver of trial counsel's actual conflict of interest.

---

See Commonwealth v. Francis, 485 Mass. 86, 95-97 (2020), cert. denied, 141 S. Ct. 2762 (2021).

The defendant is therefore "entitled to a new trial under art. 12 without a further showing of prejudice." Commonwealth v. Tate, 490 Mass. 501, 518 (2022).  Affirming the grant of a new trial on this basis, we do not reach the question whether the motion judge committed an error of law or abused his discretion in further concluding that, even aside from counsel's actual conflict requiring reversal without consideration of prejudice, a new trial was also warranted on the basis of ineffective assistance of counsel under our usual standard for assessing such claims set forth in Saferian, 366 Mass. at 96. Rather, we remand for a new trial at which the defendant shall be represented by unconflicted counsel.

Order allowing motion for a
new trial affirmed.